THE STATE v. JOHN N. CRUSIUS, JOHN C. CARR, DENNIS McLAUGHLIN AND GOTTFRIED WALBAUM.

1. Upon a motion in arrest of judgment, where the record contains an indictment in due form, the arraignment of the defendants and their plea of guilty, a statement of facts agreed upon as showing the conduct of the defendants for which they were indicted, cannot be embodied in the record so as to be considered in determining whether the defendants should be convicted or not.
2. Acts which would have constituted a public nuisance under the common law, are in New Jersey a statutory misdemeanor by force of section 192 of the Crimes act.
3. Section 4 of the act relative to statutes (*Rev., p.* 1120) prescribes a rule for the interpretation of statutes which repeal prior penal statutes, and therefore is within the object expressed by the title of the act.
4. A statute passed February 27th, 1893, declared that certain acts which, under the common law, would have amounted to a public nuisance, should not be criminal or indictable, and that all inconsistent laws, statutory or common, should be repealed ; nevertheless, by the rule of construction prescribed in section 4 of the act relative to statutes, acts of that nature committed before February 27th, 1893, continued to be offences and punishable under section 192 of the Crimes act.

On indictment.

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the state, *Charles H. Winfield.*

For the defendants, *Allan L. McDermott.*

The opinion of the court was delivered by

Dixon, J.   At the December Term, 1893, of the Hudson County Oyer and Terminer, the defendants were indicted in the usual form for keeping a disorderly house, and in May, 1894, they pleaded guilty.   The judges of the Oyer and Terminer being unable to agree upon a sentence, the state caused the proceedings to be removed into this court, and now prays judgment on the plea.

The defendants move in arrest of judgment, basing their motion upon a written stipulation, signed by their counsel and the public prosecutor, and sent up by the court below as part of its record, which states the conduct for which the defendants were indicted.   Such conduct, the defendants insist, was, at the time of their indictment, not punishable.

We think this stipulation cannot be considered upon a motion in arrest of judgment.   That motion must be determined solely by the record, using the term in its proper sense.   So employed, it imports the history of only those proceedings which take place in the orderly progress of a cause, and which the common law or statutes require to be perpetuated.   In the present case, these comprise merely the indictment with its incidents, the arraignment of the defendants and their plea.   The plea of guilty conclusively established the truth of the indictment, so far as the legal propriety of conviction was concerned, and, so long as that plea stands, there is nothing to justify a statement or an investigation of facts for the purpose of ascertaining whether the defendants should be convicted or not.   In the face of such a plea, the stipulation can have no place in the record, and therefore is utterly void of significance on a motion to arrest the judgment.

The defendants further urge that in case we consider their acts as set forth in the stipulation legally dispunishable, then they should be permitted to withdraw their plea and plead

not guilty, and to this prayer the prosecutor makes no objection. The application is of course addressed to our discretion, but it ought to prevail, if, in our judgment, the plea of guilty is not warranted by the truth.

The stipulation is to the effect that from January 16th, 1892, up to the presentation of the indictment in December, 1893, the defendants kept a place in Hudson county where persons resorted for the purpose of betting on horse races, and where the practice of betting on horse races, commonly known as book-making, was habitually carried on, within the enclosure of the North Hudson Driving Park Association, and upon the races authorized by it within its enclosure and during the race days. The stipulation also sets out that the association was incorporated under our statutes, for the improvement of horses in running, racing and trotting.

On February 27th, 1893, the legislature passed a law which, the defendants insist, declared that such conduct as is described in the stipulation should not constitute a nuisance or the keeping of a disorderly house, or any other misdemeanor or criminal offence, and that the persons engaged therein should not be indictable. This law also enacted that all laws and parts of laws, both statutory and common, inconsistent therewith, should be thereby repealed.

The defendants contend that by this statute their conduct, subsequent to its passage, was not criminal, and their conduct previous to its passage was rendered dispunishable.

The argument presented to support this contention with respect to the previous conduct, is that such conduct was criminal by force of the common law only ; that, *pro tanto*, the common law was repealed by the statute, and that the effect of such repeal was to extinguish the criminality of prior offences for which judgment had not been pronounced against the offenders, upon the principle that after the repeal or expiration of a law, no penalty can be imposed or punishment inflicted for violation of the law committed while it was in force, unless some special provision be made for that purpose by statute.

The principle thus invoked seems to be thoroughly estab-lished.    1 *Hale P. C.* 291 ; *Yeaton* v. *United States,* 5 *Cranch* 281 ; *Commonwealth* v. *Marshall,* 11 *Pick.* 350 ; *Den* v. *Du-bois,* 1 *Harr.* 285, 300 ; *Hartung* v. *People,* 22 *N. Y.* 95 ; *Commonwealth* v. *Kimball,* 21 *Pick.* 373 ; *Norris* v. *Crocker,* 13 *How.* 429 ; *United States* v. *Tynen,* 11 *Wall.* 88 ; 23 *Am. & Eng. Encycl. L.* 512.

. But we think it is not applicable to the present case, be-cause the criminality of the defendants' conduct depends on statute, and by section 4 of "An act relative to statutes" (*Rev., p.* 1120), it was enacted " that no offence committed, and no liability, penalty or forfeiture, either civil or criminal, in-curred previous to the time when any statutory provision shall be repealed or altered, shall be discharged or affected by the repeal or alteration of any statute under which such offence, liability, penalty or forfeiture was incurred, unless it be ex-pressly declared in the act of the legislature whereby such repeal or alteration shall be made that offences, liabilities, penalties or forfeitures already committed or incurred shall be thereby released or discharged ; and indictments and prosecu-tions for such offences, liabilities, penalties and forfeitures shall be instituted and proceeded with in all respects as if such prior statute had not been repealed or altered," except as to mere matters of practice.

The statute on which, in our opinion, the criminality of the defendants' conduct may be rested, is section 192 of the Crimes act.    *Rev., p.* 261.    This enacts that " assaults, bat-teries, false imprisonment, affrays, riots, routs, unlawful as-semblies, nuisances, cheats, deceits, and all other offences of an indictable nature at common law, and not provided for by this or some other act of the legislature, shall be deemed mis-demeanors, and the offender on conviction shall be punished by imprisonment at hard labor or otherwise, not exceeding two years, or by a fine not exceeding five hundred dollars, or both."    The substance of this statute has been in force since March 18th, 1796.    *Pat. L., p.* 208.

The conduct of the defendants amounted to a nuisance, and

although such conduct was indictable at common law, yet since the passage of this statute it has been an offence against its terms. Counsel for the defendants would construe the act as though it merely provided for the classification and punishment of common law offences, so long as the common law remained to condemn them; but the statute is much broader than this. It contains every ingredient necessary to fasten upon the acts to which it relates the character of statutory crimes. It denotes the acts which it is intended to prohibit; it declares those acts to be misdemeanors and provides that the person committing any of them may be convicted as an offender, and thereupon shall be punished by fine or imprisonment, or both. It may indeed be necessary to look to the common law for precise definitions of some of the terms employed in this statute, but, the definitions being thus ascertained, the guilt of persons who commit the acts covered by those definitions depends, not or not solely on the prohibitions of the common law, but on the expressed will of the legislature. Whether the common law criminality of these acts remains, or it has been supplanted by this statute so as to have become extinct, we need not now decide, for in either case the statute must have sway, both in its prohibitions and in its penalties, except so far as the legislative will which it expresses is legally revoked.

As already indicated, that will has not been revoked with regard to the conduct of the defendants prior to February 27th, 1893, because of section 4 of the act relative to statutes, the act of February 27th, 1893, not expressly declaring that previous offences or penalties should thereby be released or discharged.

It is further urged on behalf of the defendants that section 4 of the act relative to statutes is unconstitutional, because the object of that section is not expressed in the title of the act; that the section does not relate to statutes but to crimes, providing, not a rule of interpretation, but a rule of substantive criminal law, by which offenders may be punished after the law which rendered their conduct penal has ceased.

The objection, we think, is invalid. The section does relate to statutes, by prescribing a rule for their construction. It declares in effect that every statute which repeals a prior penal statute shall be construed as though it contained a clause saving previous offences from its operation, unless on its face it expressly declares a contrary purpose. This is, I think, nothing more than providing that such repealing statutes shall have a reasonable interpretation. In view of the general rule that statutes deal with the future only, it was a strained construction which implied, in terms naturally expressive of prospective operation only, a purpose to remit the punishment of past offences. This section forbids such a construction, and in so doing is plainly within the scope of the title.

Our conclusion is that, for the maintenance of their disorderly establishment from January 16th, 1892, until February 27th, 1893, the defendants are punishable under this indictment, and therefore the court should proceed to judgment upon the plea of guilty.

MAGIE, J. While I concur in the opinion of Mr. Justice Dixon, I desire not to be understood as admitting that the act of 1893 is applicable to defendants.

It was thereby enacted that "book-making" on horse races should not be a criminal offence, and persons engaged therein should not be indictable, when it is carried on within the exterior enclosure of the grounds of any agricultural society or other incorporated body of this state wherein, for the racing of horses for money, such society or body is not indictable.

Defendants can claim immunity under that act only in case the North Hudson Park Driving Association was not indictable for horse-racing for money within its enclosure.

By section 55 of the Crimes act, the racing of horses for money is made a criminal offence, but a proviso declares that the section shall not apply to "fairs or exhibitions of any agricultural or other incorporated society." *Rev., p.* 237.

The fairs and exhibitions intended by this proviso are plainly those which such incorporated societies have power to hold. No one would contend that a corporation empowered to carry on a banking, insurance or manufacturing business could open a race-course and race horses for money and be protected by this proviso.

The North Hudson Park Driving Association was organized under the Corporation act of April 7th, 1875. *Rev., p.* 179. Its certificate, executed on March 16th, 1885, set out the objects of the organization to be (1) the improvement of agriculture and agricultural stock, and (2) the improvement of horses, mares and geldings in running, racing and trotting. Corporations organized under general laws of this sort acquire the powers which are necessary to the attainment of the expressed objects of the organization. 1 *Morawetz Corp.,* § 318.

Competition may be necessary to the attainment of improvement of horses, &c., in running, &c., but the public exhibition of such competition is not necessary thereto. Nor do I think that it is incident to such object.

But this corporation cannot be deemed to have incidentally acquired power to hold such exhibitions; for, by a supplement to the Corporation act, approved March 3d, 1880 (*Rev. Sup., p.* 159), the tenth section of the act was amended so as to include as one of the objects of incorporation the carrying on of "agricultural fairs and exhibitions for the encouragement of competition in the  * \*  \*  * development of speed in horses."

When the North Hudson Park Driving Association was organized, in 1885, those who associated themselves might have expressed their object, or one of their objects, to be the holding of a fair or exhibition, as permitted by the supplement of 1880, above cited. Had they done so, they would probably have fallen within the terms of the proviso to section 55 of the Crimes act.

But the certificate executed and filed by them did not in-

clude that object.   In my judgment, it cannot be construed to incidentally clothe the corporation with a power which it might have acquired by an express declaration of its purpose to acquire such power.

Had this corporation included this object in its certificate, it would have acquired the further powers conferred by the supplement to the Corporation act, approved May 9th, 1889 (*Pamph. L., p.* 409), under which it would seem that the proviso to section 55 of the Crimes act would have applied to it.

My conclusion is that this association could not claim immunity under that proviso, but would have been indictable for racing horses for money.   It follows that the act of 1893 is inapplicable to the acts admitted to have been done by defendants.