GUSTAVE BECKER, PROSECUTOR, v. THE BOROUGH OF GARWOOD, RESPONDENT.

Submitted July 7, 1921—Decided November 12, 1921.

1. Commissioners appointed pursuant to *Pamph. L.* 1917, *p.* 377, *art.* 20, § 18, as amended by *Pamph. L.* 1918, *p.* 485, to make the assessment for a local improvement not "of a general nature affecting the greater part of the properties in the municipality," must be "in no way interested in such improvement," and if interested by reason of ownership of property in the vicinity of the improvement which is incidentally benefited thereby, an assessment made by them will be set aside.

2. In order to sustain an assessment levied under chapter 152 of *Pamph. L.* 1917, *p.* 319, for a local improvement it must affirmatively appear that the assessment is not in excess of the peculiar benefit, advantage or increase in value which the land received by reason of such improvement.

3. *Certiorari* lies to challenge an assessment (for a local improvement) made by commissioners who are legally disqualified to act, even though the statute (*Pamph. L.* 1917, *p.* 392, *art.* 20, § 42, as amended by *Pamph. L.* 1918, *p.* 486) provides for an appeal to the Court of Common Pleas to correct an assessment not "just and fair."

On *certiorari*.

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Paul Q. Oliver*.

For the respondent, *Donald McLean*.

The opinion of the court was delivered by

TRENCHARD, J. The defendant borough constructed a storm water sewer in certain of its streets and thereafter

caused an assessment for such improvement to be made against lands of the prosecutor, among others.

This writ challenges the legality of that assessment.

We are of the opinion that the assessment cannot be sustained.

The record discloses that an ordinance providing for the improvement was introduced in common council July 15th, 1919. It provided for a storm sewer to be constructed on the northerly side of Pine avenue, to be laid under and along the sidewalk on the northerly side of the avenue to the westerly side of East street, and thence northerly under and along the sidewalk on the westerly side of East street to the brook. The council fixed August 5th, 1919, for hearing objections to the ordinance, and at that meeting a protest was presented by property holders on Locust, Spruce and Myrtle avenues against being assessed for benefits in connection with the improvement called for by the ordinance. Further proceedings were deferred until the next regular meeting, when the street committee, to whom the protest had been referred, reported that they had gone over the objections and found that all of them related to assessments against property on the last-named streets or avenues, and recommended that such streets or avenues be "eliminated from benefits." The ordinance was then passed providing for a storm sewer as above described. It further provided that catch basins and manholes should be constructed under the supervision of the borough engineer, and also that "so much of the cost and expense of constructing the sewer, manholes and catch basins as may be lawfully assessed upon the property especially benefited thereby, should be so assessed by the commissioners of assessment." This ordinance was adopted August 19th, 1919.

The record further shows that the improvement was later completed, and that, at a regular meeting of the council held October 5th, 1920, Peter M. Erickson, W. J. Kelly, Jr., and Edgar S. Harrison were appointed commissioners to make the assessment for benefits. On December 21st, 1920, the commissioners made their report.

The record also shows that each of these commissioners signed the protest against any attempt to assess their property.

The first point which the prosecutor makes is that these commissioners were not three discreet freeholders, "in no way interested in such improvement" such as the statute (*Pamph. L.* 1917, *p.* 377, *art.* 20, § 18, as amended by *Pamph. L.* 1918, *p.* 485) requires them to be.

We think the point is well taken. The statute (*Pamph. L.* 1917, *p.* 377, *art.* 20, § 20) makes it the duty of these commissioners when appointed to "examine the said work and view all lands and real estate in the vicinity of said local improvement benefited by such improvement," and to assess such land and real estate "as near as may be in proportion to the peculiar benefit, advantage or increase in value which the respective lots and parcels of land and real estate shall be deemed to receive by reason of any such improvement. *Pamph. L.* 1917, *p.* 380, *art.* 20, § 24.

Now, the record shows that the lands owned by the commissioners, who were appointed to make the assessment, were at least incidentally benefited, because although the sewer was not actually laid in the street on which their lands were located, it was laid in the vicinity of their lands and there were catch basins which would receive and carry off the water falling on their lands. Obviously, these commissioners, who were to determine what lands were benefited, were not entirely disinterested as to that question, since it appears that they protested against the improvement because there was a possibility of their being assessed. There was nothing in the ordinance which undertook to limit the drainage area. Their appointment, therefore, made each a judge in his own case. It is remarkable that all three of these commissioners were selected from the disputed drainage area. Of course, if this had been an improvement "of a general nature affecting the greater part of the properties" of the borough, then, under the statute (*Pamph. L.* 1918, *p.* 485, *art.* 20, § 18), any discreet freeholder, resident of the borough, might have been appointed regardless of the fact of his ownership of property

included in such assessment. But that is not this case. And it makes no difference, in our view, if it be a fact that the borough engineer fixed the drainage area, because, of course, that is a power which he did not have and which the council could not delegate to him.

There is another reason why the assessment must be set aside.

It is essential that it should affirmatively appear that the assessment is not in excess of the peculiar benefit, advantage or increase in value which the land received by reason of such improvement. *Pamph. L.* 1917, *p.* 380, *art.* 20, § 24; *Rosell* v. *Neptune City,* 68 *N. J. L.* 509; *Essen* v. *Cape May,* 77 *Id.* 361.

This does not appear. The report does not show it, and, moreover, one of the commissioners testified that it was troublesome to figure out the extent to which the properties were benefited, and, in order to save argument and dissatisfaction, they decided to assess all the property which they deemed benefited upon a square-foot basis; and another commissioner says that the properties were assessed per front foot at a fixed rate. We think the conclusion is justified that the commissioners thought they were not able to assess according to peculiar benefits, without, as they say, creating dissatisfaction, and, therefore, they adopted an arbitrary method.

The defendant borough contends that *certiorari* does not lie because the statute (*Pamph. L.* 1917, *p.* 392, *art.* 20, § 42, as amended by *Pamph. L.* 1918, *p.* 486) provides for an appeal to the Court of Common Pleas, in which court an assessment not "just and fair" may be corrected.

But that statute does not deprive the prosecutor of the use of the writ of *certiorari* to challenge an assessment made by commissioners who were legally disqualified to act.

The whole assessment, having been illegally made, must be set aside *in toto,* with costs, to the end that a proper reassessment may be made in the manner provided by law.