FIRST NATIONAL BANK OF FORT LEE, PROSECUTOR; MARIE L. HAMILTON AND LUCILLE HAMILTON, PROSE-CUTRICE, v. MAYOR AND COUNCIL OF THE BOROUGH OF ENGLEWOOD CLIFFS, BOROUGH OF ENGLEWOOD CLIFFS, AND HAROLD G. HOUGHTALING, COLLECTOR OF TAXES OF THE BOROUGH OF ENGLEWOOD CLIFFS, RESPONDENTS.

Argued October 4, 1939—Decided January 5, 1940.

Before Justices PARKER, BODINE and PERSKIE.

For the prosecutor and prosecutrice, *Milton T. Lasher.*

For the respondents, *William M. Seuffert.*

The opinion of the court was delivered by

PERSKIE, J. There are two writs of *certiorari* involved in this case. The purpose of each is to review (1) a proposed tax sale which was to have been held under and by virtue of sewer assessments levied on November 18th, 1931, by the borough of Englewood Cliffs; and (2) a resolution of the mayor and council of said borough under date of October 13th, 1938, which resolution rescinded a previous resolution dated July 8th, 1937, which in turn had abated the balance due on the assessments.

Marie L. Hamilton and Lucille Hamilton (hereafter referred to as the Hamiltons) are the prosecutrice of one writ; and the First National Bank of Fort Lee (hereafter referred to as the Bank) sued out the other; it being the holder of a mortgage on the premises of Marie L. Hamilton, which premises are allegedly subject to the aforementioned assessment.

While the record before us does contain a "Return to Writ" in both the Hamilton and Bank cases, the schedules referred to in those returns, consisting of minutes of meetings of the respondent municipality and depositions are appended to the return in the Bank case only. Counsel, with the approval of Mr. Justice Bodine (see *Phi Zeta Fraternity* v. *City of New Brunswick,* 123 *N. J. L.* 237; 8 *Atl. Rep.* (2d) 553), have stipulated that the cases be argued together, apparently intending that the full return with schedules annexed in the Bank case be our record for both cases. We so regard it.

From the various minutes of the meetings of the mayor and council of respondent municipality we learn that a sewerage system was constructed in the municipality at a cost of $322,856.97; that the Board of Assessors were requested to make an assessment upon the lands benefited by the improvement; that notice was given by the board of a hearing during which it considered the assessment; that the Board of Assessors filed its report certifying the assessment; that due notice was given by the mayor and council of respondent municipality of a meeting to be held on November 18th, 1931, when the report of the board was to be considered; and that on

November 18th, 1931, a resolution was passed adopting and confirming the assessment as made by the Board of Assessors.

At this point it should be noted that the Hamiltons are owners of adjoining properties in the borough of Englewood Cliffs. These properties are known as Lot 1C in Block 8 and Lot 1B in Block 8. Both of these lots are bounded on the west by a highway known as Hudson Terrace, lot 1C having a frontage of 111.28 feet on that highway and lot 1B having a frontage of 125.34 feet thereon. Lot 1C has an average depth of 383 feet and the building located thereon is approximately 225 feet from Hudson Terrace, while lot 1B has an average depth of 319 feet and the building located thereon is about 200 feet from Hudson Terrace. Hudson Terrace is within that part of the municipality wherein it constructed the sewerage system hereinbefore mentioned. By virtue of that fact, prosecutors' properties were assessed $853.46 and $736.80, respectively, for the benefits allegedly accruing by virtue of the new system. Each of the Hamiltons paid some portion of their assessment from time to time until the summer of 1936. Marie Hamilton paid $260.47 and Lucille Hamilton paid $372.40.

Turning once again to the minutes of the meeting of the borough, we learn further that on May 27th, 1937, the mayor appointed a committee to investigate the matter of sewer assessments on the Hamiltons' properties. This action was taken as a result of communications received from the Hamiltons who, notwithstanding the fact that they had made payments, apparently complained about the assessments. The matter was discussed by the council again on June 10th, 1937, and on July 8th, 1937, a resolution was passed abating the assessments levied upon the Hamiltons' properties. Fifteen months later, on October 13th, 1938, without giving any notice of their intention to do so, the mayor and council of respondent municipality passed another resolution rescinding the one passed by it on July 8th, 1937, and reinstating the assessment.

In the meantime, on May 9th, 1935, Marie L. Hamilton, the owner of lot 1C, block 8 and her husband executed a

$5,000 mortgage on the premises to the Bank. The mortgage money was paid to the mortgagors by two checks. One check for $3,000 was turned over outright to the mortgagors, and the other check for $2,000 was endorsed by the mortgagors and retained by the Bank "for taxes and assessments which were open at the time." Subsequently, on June 14th, 1935, the Bank paid out of the $2,000 held by it the sum of $1,453 to respondent municipality for taxes. The remaining $547 was held by the Bank and on June 12th, 1936, $300 thereof was paid to respondent municipality. This sum was applied to the sewer assessment against lot 1C, block 8. The balance of $247 was retained by the Bank "pending settlement of [the] assessment situation." On July 23d, 1937, the Bank procured an official tax search which did not disclose the existence of any assessment, and on July 31st, 1937, it paid the remaining $247 to the mortgagors.

Apparently no payment of the assessments was made to the municipality after the resolution of October 13th, 1938. Accordingly the Hamiltons' properties were listed for sale for the amount of the assessment, plus interest. The sale was to have taken place on June 17th, 1939, but we are told that it was stayed, pursuant to the mandate of the rules to show cause which were the basis for the allowance of the present writs.

At the outset respondents contend that the writs should be dismissed because of laches and because prosecutors failed to resort to the statutory tribunals before obtaining the writs of *certiorari*.

We find no merit in either of these contentions. So far as laches is concerned it will suffice to observe that prosecutors' attack is leveled not upon the original assessment which was made on November 18th, 1931, but rather upon the resolution of October 13th, 1938. Prosecutors' insistment is not that the assessment should be set aside but rather that the resolution in question be held invalid. Under such circumstances we are not inclined to hold, nor does the record disclose, that there was either a sufficient lapse of time or a change in position. Accordingly the defense of laches is unavailing. *Cf.*

*Carr* v. *Merchantville,* 102 *N. J. L.* 553 (at *pp.* 558, 559);
142 *Atl. Rep.* 1; *Marjon* v. *Altman,* 120 *N. J. L.* 16; 197
*Atl. Rep.* 724.

And while it is true that *certiorari* to review assessments
for benefits as excessive will be denied where prosecutor has
not first resorted to the statutory tribunals (*Graham* v. *Ocean
City,* 98 *N. J. L.* 426, 429; 119 *Atl. Rep.* 772), that prin-
ciple has no application to the instant case. For here,
although prosecutors argue that the assessment was void
because the value of the property was allegedly not enhanced
by the improvement, that question is not properly before us.
*Becker* v. *Garwood,* 96 *N. J. L.* 327, 330; 115 *Atl. Rep.* 334.
The writs are concerned with the validity of the stated
proceedings.

We are entirely satisfied that the resolution of October
13th, 1938, is invalid and should be set aside. This resolu-
tion merely rescinded a prior resolution under date of July
8th, 1937. If the prior resolution was valid, and we are not
to be understood as expressing any opinion on this score,
prosecutors "acquired vested rights thereunder which could
not be taken from them." *Cf. Montefiore Cemetery Co.* v.
*Newark,* 3 *N. J. Mis. R.* 1100, 1101; 130 *Atl. Rep.* 730;
*Hudson Telephone Co.* v. *Jersey City,* 49 *N. J. L.* 303; 8
*Atl. Rep.* 123; *Phillipsburg, &c., Power Co.* v. *Phillipsburg,*
66 *N. J. L.* 505; 49 *Atl. Rep.* 445; *Peerless Oil Co.* v. *Hague,*
4 *N. J. Mis. R.* 148; 132 *Atl. Rep.* 332; *Grossman* v. *Mayor,
&c., Jersey City,* 6 *N. J. Mis. R.* 688, 689; 142 *Atl. Rep.* 558.
And if, on the other hand, as respondents contend, the prior
resolution was invalid, on which question as already indicated
no opinion is expressed, "it was not for the municipality to
pass judgment upon its own act." *Montefiore Cemetery Co.* v.
*Newark, supra; Phillipsburg, &c., Power Co.* v. *Phillipsburg,
supra. Cf. Decker* v. *Board of Excise, Elizabeth,* 57 *N. J. L.*
603; 31 *Atl. Rep.* 235; *Vanaman* v. *Adams,* 74 *N. J. L.* 125;
65 *Atl. Rep.* 204. In either circumstance, therefore, the reso-
lution presently under attack, must fall. And, the resolution
being invalid, the proposed tax sale based at least in part on
that resolution, is likewise improper.

This view of the cases renders unnecessary any discussion of the additional points raised by the Hamiltons and the Bank.

Accordingly the resolution under date of October 13th, 1938, and the tax sale proceedings are set aside as to both prosecutors, with costs.