THE STATE, WILLIAM L. MORRIS, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF BAYONNE.

1. The "Act to provide for the making and collection of benefit assessments for the construction of sewers in the cities of this state in certain cases," approved April 28th, 1887 (*Pamph. L.*, p. 231), construed not to repeal previously existing provisions for making assessments for the cost of trunk sewers, contained in the charters of the cities of the state, but only to afford an additional mode for making such assessments, if the act is within legislative authority.

2. An assessment on property, as presently benefited by the construction of a sewer, must be presumed to have been made on the ground of some present appreciable benefit. When it is shown by clear proof that the property cannot, without the construction of lateral sewers, connect with the main sewer for drainage, and that surface water is not carried therefrom by said sewer in a mode appreciably better than that previously afforded by the configuration of the land and natural water courses, no benefit has been conferred on the property sufficient to justify a present assessment.

The above entitled writ required defendant to certify to this court the proceedings and assessments for the construction of a brick sewer through Fifth street and Ingham avenue, from Cottage street to the Kill von Kull, in the city of Bayonne.

Six other similar writs issued in behalf of other prosecutors. By order of the court, the return to the above mentioned writ

was directed to be taken as a return to each of these writs, and evidence was taken to be used on the hearing of all the writs.

Another writ, in behalf of other prosecutors, was issued, requiring defendants to certify the final assessment for the same sewer, and the proceedings whereon it was imposed. Evidence was separately taken in that case.

All the writs were brought to hearing together.

Argued at February Term, 1890, before Justices KNAPP and MAGIE.

For the prosecutors, *De Witt Van Buskirk* and *George Putnam Smith.*

For the defendant, *Charles W. Fuller* and *Joseph D. Bedle.*

The opinion of the court was delivered by

MAGIE, J.    From the returns and affidavits it appears that the municipal authorities of Bayonne, some years ago, constructed a sewer designed to drain an extensive district. It terminated at Fifth street and Cottage Place, and there discharged into a tidal ditch or creek running to the bay. The discharge afterward became so offensive and injurious at the mouth of the sewer and along the ditch that, in December, 1884, the Court of Chancery, upon a bill filed by the owner of land affected, issued a permanent injunction against emptying filth and sewage on the lands of that owner.

By an ordinance, approved February 11th, 1888, the city determined to build a brick sewer, from the termination of the sewer above described, through Cottage street and Ingham avenue, to the Kill von Kull, in accordance with an established sewer plan for that section of Bayonne. Under the provisions of that ordinance, a sewer of five feet diameter has been built; and it is the assessment for its cost which is now objected to.

Prosecutors' objections may be grouped into three classes, viz.—*first*, objections to the assessment imposed on lots which

have no drainage at all into the sewer; *second*, objections to the assessment imposed on lots, the surface water from which gains access, more or less, directly into the sewer; and, *third*, objections to the assessments imposed on lots lying on the line of the sewer in question, and which can be drained thereby.

Under the objections included in the first two classes, a preliminary question arises respecting the "Act to provide for the making and collection of benefit assessments for the construction of sewers in the cities of this state in certain cases," approved April 28th, 1887. *Pamph L., p.* 231.

That act provides for cases where sewers have been or may be constructed in cities, forming a trunk line into which lateral sewers may discharge, and through which the surface drainage and sewage of a district may be carried, and enacts that, in such cases, it "shall and may be lawful, in assessing benefits for the construction of such trunk line, to assess the same on all the property benefited and to be benefited within the entire drainage district," and that "where a direct tapping benefit is or may be secured, either by connecting with the trunk line or lateral sewers already constructed," the assessment, when finally confirmed, shall become collectible at once, as in other cases;" but "when the benefit is prospective, and depends upon the construction of lateral and connecting sewers not yet built," the assessments shall become liens only from the time the connecting sewers are built, and shall draw interest only from the date of the confirmation of an assessment for the lateral sewer. By section 2, the commissioners, in making such an assessment, are required to first ascertain the benefits conferred on property on the line of the trunk sewer, and deduct their total from the entire cost, and they may then assess the balance of the cost on other property benefited and to be benefited by the construction of lateral sewers.

The commissioners' report before us was obviously not made under that act. It makes no distinction between the assessments upon the property along the line of the trunk sewer, which may be connected therewith, and property not on its line, and not capable of such connection for the want of con-

necting sewers. Moreover, the evidence of the commissioners makes it clear that the assessment in each case was imposed by them by reason of a supposed present, and not a prospective, benefit, afterward to arise.

Prosecutors contend that the act in question has repealed the provisions of the charter of Bayonne, and become the sole rule for laying assessments in the case of a trunk sewer, such as this is, and insist that the assessments before us, not being made under that act, are invalid.

By the provisions of the act, a scheme for assessing upon property the cost of trunk sewers to the extent of benefits conferred is plainly designed.

By the charter of Bayonne (which, in this respect, resembles the charters of other cities of the state), property not afforded a present benefit could not be assessed for its cost, but if such property was afterward connected by laterals with a main or trunk sewer, it would then become assessable for the cost of the latter to the extent of the peculiar advantage conferred thereby. *New Jersey Railroad and Transportation Co.* v. *Elizabeth,* 8 *Vroom* 330; *Kellogg* v. *Elizabeth,* 11 *Id.* 274.

The scheme then in common use before the passage of the act of 1887 provided for an immediate assessment on all property presently benefited by the construction of a main or trunk sewer, with power to make subsequent assessments on property which by laterals or connecting sewers afterward acquired a benefit therefrom.

Has the act of 1887 repealed these provisions of the various city charters, and substituted its own provisions as the sole rule for assessing the cost of trunk sewers?

It contains no words of repealer.

But the act is manifestly general in its scope, and it is now settled that every such act, regulating the internal affairs of towns, must, under the constitutional mandate, be deemed to repeal all inconsistent provisions in special charters, whether an express repealer be stated or not. *Haynes* v. *Cape May,* 23 *Vroom* 180. In that case, it was held that a general law conferring on all cities a certain power, took the place of a

special law previously conferring the same power on one city, and became in that respect the source of its municipal authority.

But the case in hand materially differs.  There the enactment showed an intent that the general act should supersede the local and special act, for otherwise it would be inoperative in some localities, and therefore not general, but within the prohibition of the constitution.

In the case before us, cities already possessed of power to assess upon property the cost of trunk sewers are empowered to make such an assessment, but in a different mode.  If by a single act authority had been given to make such assessments by one or the other mode, there would have been no inconsistency in the provisions.  Nor would the act have been open to any constitutional objection, for a grant of powers to be exercised at the option of every municipality is not prohibited.  *In re Cleveland*, 23 *Vroom* 188.

If the provisions of the act of 1887 are merely permissive in the grant of authority to assess in such cases in a certain mode, no necessary inconsistency would exist between them and the provisions of special charters providing for such assessments in another mode, and the municipalities affected may be deemed to have an option of resorting to one or the other mode.

But if the terms of that act are mandatory, its provisions must be deemed to have superseded the provisions of special charters, and to have impliedly repealed the latter.

The power to assess is given by the act of 1887 in these words, viz.: "It shall and may be lawful," &c., which, in their natural significance, are simply permissive.  Such words are to be taken in their primary sense, unless something in the subject matter of the enactment requires a different construction, *per* Blackburn, J.  *Re Newport Bridge*, 2 *El. & E.* 377.  When public interests are concerned, such words may doubtless be construed to be mandatory.  *Davison* v. *Davison*, 2 *Harr.* 169; *Seiple* v. *Elizabeth*, 3 *Dutcher* 407; *State* v. *Newark*, 4 *Id.* 491.  Where public interests are concerned, it

has been frequently held, from other indications in the statute, that such words do not create a duty, but leave a discretion in the exercise of the power. *Wilberf. Const. Stat. L.,* p. 201 *et seq.; Pott. Dwarr.,* p. 220, n. 27.

But the construction of this statute is not, in my judgment, affected by the interest of the public in its subject matter. If, at the time of its passage, no power existed in cities to assess on property benefited the cost of trunk sewers, the permissive words of the enacting clause would, no doubt, require to be construed to be mandatory, for otherwise the public, interested in being reimbursed for the expense of the improvement, might be injured by neglect to make use of the act. But at that time ample powers had been conferred to reimburse the public for such expenditure. Those powers were, it is true, to be exercised in a different mode, but it was manifestly immaterial, so far as the public interests are concerned, whether they were exercised in one or the other mode. In this respect the case before us seems parallel with *Seiple* v. *Elizabeth, ubi supra,* where such an enactment was held not to be mandatory but permissive.

The result of my examination has led me to the conclusion that the act of 1887 was not designed to supersede the provisions of special charters for assessment of the cost of trunk sewers, but to provide another mode for such assessment, which any city might adopt.

This result renders it unnecessary to consider the important question, pressed in argument, whether the act of 1887 is within legislative power to enact, and no opinion need be expressed on the subject.

Turning, then, to the charter of Bayonne, under which the assessment before us was made, we find its provisions to be similar to those contained in the charters of other cities, which have been the subject of judicial consideration. It was urged that our decisions thereon are variant and irreconcilable. But, after collating all the cases, no variance in principle can be discovered. They establish these propositions, viz.: the benefit which will justify such an assessment must be a

present appreciable benefit; such a benefit will be conferred by a sewer into which the drainage of cellars, cesspools, bath rooms, &c., may be discharged, or by which surface water may be carried off in an appreciably improved mode; when an assessment on property is certified to have been imposed for benefits, it will be presumed that the property has been in some mode benefited, and the presumption can only be overcome by clear and cogent proof; if it thus appears that property assessed for a sewer has been afforded neither kind of drainage, or no drainage which it had not previously possessed, such presumption will be overcome. *New Jersey Railroad and Transportation Co.* v. *Elizabeth,* 8 *Vroom* 330; *Kellogg* v. *Elizabeth,* 11 *Id.* 274; *Henderson* v. *Jersey City,* 12 *Id.* 489; *King* v. *Reed,* 14 *Id.* 186; *McKevit* v. *Hoboken,* 16 *Id.* 482.

Taking up the objections included in the first two classes mentioned, and applying these rules to the evidence before us, it is clear that some of the property of prosecutors has been erroneously included in this assessment. Some of the property has and can have no present drainage of any kind through this sewer; other parts of the property, the surface water of which eventually reaches and goes through this sewer, previously had as effective and complete surface drainage by nature as that now furnished. With respect to such property, there is no present benefit for which an assessment may be imposed.

In a schedule annexed will be found the names of prosecutors and a statement of their property which is determined to have been erroneously assessed. The assessments thereon must be set aside.

Where the proof produced has not been found to be clear, the assessments must stand on the presumption of the correctness of the commissioners' assessment.

The contention of owners who make the objections included in the third class, above mentioned, is that the assessments on their property are excessive. Their property lies on the line of the sewer and may be connected therewith. It thereby

obtains a present benefit and it is not denied that an assessment may be made thereon. But the claim is, that this sewer was built of a diameter of five feet to accommodate the wants of a large district, and yet furnishes to these prosecutors no better drainage. than would be afforded by a small sewer. They insist that a brick sewer of thirty inches in diameter, or a.pipe sewer of less diameter, would be sufficient to afford effectual drainage of their lots, and that such sewers could be constructed at a cost for each lot less than the assessments imposed for this sewer.

It is unnecessary to determine whether this claim rests on a sound principle of assessment of the burdens which fall on property owners for the costs of improvements, adapted not only to their own needs, but also to the needs of the owners and occupiers of other property in the municipality, for the proofs do not sufficiently present the question. There is not that clear and cogent proof which is necessary to overcome the presumption of correctness, or to satisfy us, either that the smaller sewers would drain this property as effectually as the present sewer can, or that their cost, when assessed, would be materially less than the assessment now imposed. It appears, without dispute, that this property has in fact been benefited by an increased market value to the full extent of the assessments.

For this reason the prosecutors who make this objection have not made a case for relief.

Before any rule be entered in favor of the successful prosecutors, opportunity will be given the city to apply for any rule which it is advised is proper to bring about a complete assessment.