ESSEX COUNTY CIRCUIT COURT.

IN RE APPEAL OF VARIOUS PROPERTY OWNERS TO BENEFIT ASSESSMENTS FOR LOCAL IMPROVEMENTS FOR THE OPENING OF RAYMOND PLAZA WEST, MARKET STREET TO RIVER STREET, NEWARK.

Decided March 19, 1934.

For the objectors, *Hannoch & Lasser* (*Herbert J. Hannoch* and *Aaron Lasser*), *Harrison & Roche* (*J. Henry Harrison* and *E. S. Sanford*), *Riker & Riker* (*Theodore McCurdy Marsh*), *John M. Emery, Joseph S. Zemel, George J. H. Werner, Osborne, Cornish & Scheck, Joseph L. Lippman, Scholland & Scholland* (*Philip J. Scholland*), *Ernest L. Quackenbush, Frank Cozzoline, Howard Isherwood, Peter A. Cavicchia, Nicholas W. Kaiser, Jr., Kanter & Kanter* (*Louis C. Jacobson*), *Marder & Okin* (*Aaron Marder*), *Arthur T. Vanderbilt* (*H. Edward Toner*), *Henry Young, Jr., McDermott, Enright & Carpenter* (*Carl S. Kuebler*).

For the city of Newark, *Vincent J. Casale.*

PORTER, C. C. J. There is before this court for confirmation the report of the Newark board of commissioners of assessments for local improvements concerning the opening of a new street. The new street is called Raymond Plaza West and

was opened through property lying between Market street and River street, a distance of about four hundred feet and a width of about one hundred feet. The report is dated November 23d, 1933.

Under date of December 18th, 1933, the report was confirmed by order of this court, except as to certain objecting property owners, sixty-three in number, whose names and location of properties appear in said order. Of those so objecting and appearing at these hearings, testimony was taken concerning some eighty separate assessments aggregating $173,659.

The report shows that the entire cost of the improvement amounted to the sum of $1,459,635.44, divided as follows:

"Amount assessed on property owners ..... $216,966.00
Amount assessed on city property ......... 96,329.00
Property benefited but exempted by agreement, city of Newark-Pennsylvania Railroad ..... ............... ............ 107,319.00
Amount paid by the city of Newark ....... 1,039,021.44."

It will be observed from these figures that the city was to actually receive in money against the cost of this improvement the amount "assessed on property owners," $216.966. Deducting the sum of the assessments of the objecting owners, the subject-matter of these proceedings, $173,659, there is left the relatively small sum of $43,307 assessed against non-objecting owners. Thus it is apparent that the objection to the assessments is very general and widespread among those affected.

The paramount question raised by these proceedings is whether or not the assessments are just and fair.

From the overwhelming weight of the testimony, I must conclude that they are neither just nor fair.

To sustain these assessments, the testimony must establish these facts:

*First*—That the lands in question have received a peculiar benefit, advantage or increase in value.

*Second*—Such benefits must be present and immediately accruing from the construction of the work, tested by the influence of the improvements on the present market values.

*Third*—There must be a methodical and equitable basis for the assessment if benefits are present.

With respect to this last mentioned requirement, the method used by the commissioners on the whole was proper, assuming that there were, in fact, any benefits.

A graduated scale was used which represented the judgment of the board as to the scale of benefits or measure of increment of land values per front foot, consideration being given to plottage, &c., and fixing the greater increases of value at the lands nearest the improvement and decreasing the scale of increase as the distance increased from the starting point. This method, however, was not properly carried out in that the land represented by the new state highway, route 21, which runs directly through the property within the zone of the area of benefited land, at about the center of it, was disregarded. So that all lands to the west of the highway were deprived of the extra distance the same were away from the improvement to the extent of the width of the highway, about one hundred feet.

That method was not used, however, with respect to lands immediately fronting on the improvement and which, by reason of it, acquired new street frontage. It may be that the method used as to those lands was correct in principle. Nevertheless, confirmation cannot be given of same because of my conclusion as to the balance of the lands.

The difficulty I have with the entire report is that it is based on an erroneous judgment, namely, that there was an increase of values of these lands because of this new street.

That this opinion of the commissioners is not based on anything but theory, hope and expectation is inescapable upon consideration of the testimony.

But one of the three commissioners who made the assessments testified. He was exhaustively examined and gave in great detail the method used in the assessment of each piece of property of the objectors. His testimony was frank and

clear, and he doubtless gave all the information he had. But aside from the figures used and methods employed, his testimony on the vital question of the increase in values was of practically no help whatsoever. He repeatedly said that the commissioners had information as to land values before the improvement. Where that information came from and on what it was based was left largely to conjecture. Nevertheless, he said that those values were correct in the judgment of the commissioners. Then, again, he said repeatedly that the values were not the basis of the assessment because, irrespective of the values, their judgment was that the lands had increased in value to the extent of the graduated rates of increase of all properties within the boundaries of the established zone. Therefore, the only need for the values before the improvement was to add the calculated increased value to the base rate in their possession.

Whether the basic values were used in making the assessments or not, it seems quite clear that, at least, this member of the board was possessed of no personal experience with or knowledge of values on which it would be possible for him to form any sound judgment of the same. It does not follow, however, that neither he nor his colleagues on the commission, from a study of this improvement, could not have formed an opinion on which to base a judgment as to whether or not any lands were specially benefited.

The commissioners need not have been experts on real estate values or even experienced men of affairs. But this court, in reviewing their acts, must take into consideration the knowledge and qualifications of the commissioners in order to ascertain the basis on which their judgment was made. The commissioners cannot say, "we studied the matter and concluded the values were increased to such and such an amount," without giving reasons for their judgment. Reasons, in fact, were given by this witness, which, he said, were the reasons on which not only he but the other commissioners acted and which formed their judgment.

Those reasons or factors were but two. Increased traffic which would pass the properties in the zone by reason of

this new street. This was of very minor importance, in percentage about five. The major and controlling factor, making up ninety-five per cent., the witness said, was the general toning up of this entire area by reason of the change brought about by the necessary removal of old and dilapidated buildings to open the new street. Following this toning up process, he testified, would come a higher use of the land, a more profitable use; for instance, the establishment of hotels, theatres, retail stores of a better class than those now there.

This assessment was made during the summer of 1933 as of the end of 1931 and the beginning of 1932. It is now more than two years since the improvement and the time of the assessment. No such conditions as he pictured, as yet, have been realized. His only answer to that was that the possibilities are there. He insisted that the assessments were made only for the peculiar benefits to the land by reason of the opening of this new street and that the fact of the new Pennsylvania station fronting on the new street, as well as other changes incident to that great improvement in the immediate locality, were entirely left out of consideration.

Within this zoned area and just outside of it are other improvements and changes, made or contemplated, which cannot fail, it seems to me, to be vital factors with respect to land values and changes of uses of the property, which must follow sooner or later. I refer to the new Pennsylvania railroad station and the necessary changes in traffic conditions by reason thereof; the underground railway on the bed of the old Morris canal; the opening of Raymond Boulevard above it; the opening directly through this area of a state highway, route 21; the removal of the farmers' market place, between Raymond Boulevard and Commerce street; the widening of Mulberry street just outside of this zone, and the contemplated widening and extension of Edison Place, also just outside of this zone.

While it is true that all of these changes are not being done at the same time, still, they are, as far as effects on land values, all so closely related to each other as to make it difficult, to say the least, for anyone to separate them with re-

spect to land values covering land generally in the entire section or in a large part of it. But assuming that it is possible to do so, the question remains whether or not it was done in the instant case. I believe not. The toning up, if any, comes as much from the new railroad station project as from the new street. If there was to be no new station, or if it was not located on the new street, the toning up factor would be lessened considerably, if not entirely eliminated.

There is, of course, a presumption of the correctness of the assessments. The proof of their erroneousness should be clear before the assessments be disapproved. *Board Chosen Freeholders, &c.,* v. *Paterson Avenue, &c., Road Commissioners,* 41 *N. J. L.* 83. Had the case rested on the testimony of the commissioner, this presumption might well be said to have been overcome.

Be that as it may, there was an abundance of proof by landowners and experts of recognized standing, ability and wide experience to the effect that there was no increase in values at all, except as to lands actually fronting on the new street. This testimony was widely at variance with that of the commissioner on practically all phases of the case. Moreover, their testimony was based not only on wide experience and in part on expert knowledge, but, what seemed to the court, on sound reasoning. Ample consideration was given by them of the effect of the general business depression on land values and decreased rentals with respect to this zoned area and outside of it.

It may well be that land values will increase in this area, or part of it, by reason of this new street, independently of the new railroad station and other improvements referred to in that locality. It may also well be that any such increased values may have been retarded by reason of the general business depression. Nevertheless, we cannot speculate or guess what may happen some day.

The benefits must be immediately accruing, tested by the influence of the improvement on the present market value of the properties. *State, N. J. R. & T. Co.* v. *Elizabeth,* 37 *N. J. L.* 330; *State, Kellog* v. *Elizabeth,* 40 *Id.* 274; *State, Morris* v. *Bayonne,* 53 *Id.* 299; 21 *Atl. Rep.* 453.

There were various questions raised by some of the objectors as to the legality of the assessments. In the recent case, *In re Mulberry Street,* 11 *N. J. Mis. R.* 295; 166 *Atl. Rep.* 447, Judge Mountain said:

"On an appeal from such an assessment, the Circuit Court is to determine whether the action of the commissioners has resulted in a just and fair assessment or award." *Pamph. L.* 1925, *p.* 242.

"This limitation makes it improper for the court to inquire into the legality of the assessment. For the purposes of this appeal, it is assumed that the commissioners of assessments observed the statutory requirements, and failure to do so might have been tested by *certiorari.*"

I am accord with that view and shall follow it.

For these reasons, the report is returned without confirmation.