Bergen County Circuit Court.

OVERBRIDGE REALTY CORPORATION ET AL., APPELLANTS, v. CITY OF HACKENSACK, RESPONDENT.

Decided July 11, 1935.

For the appellants Overbridge Realty Corporation, Christopher W. O. Schmults, Arkay Holding Corporation, 329-331 Main Street Corporation, Main Street Hackensack Corporation, *Morrison, Lloyd & Morrison* (by *William J. Morrison, Jr.*)

For the appellant Alice Eager, *Warren Dixon, Jr.*

For the appellant Anna Marie Borg, *Winne & Banta* (by *Horace F. Banta*).

For the appellant Fox Metropolitan Playhouses, Incorporated, *Atwood C. Wolf* and *Charles Hershenstein* (by *Charles Hershenstein*).

For the appellants William A. O'Brien and Hanover Bond and Mortgage Company, *Hart & Vanderwart* (by *Cecil Hart*).

For the respondent, *Donald M. Waesche.*

CAFFREY, C. C. J. On March 17th, 1930, the city of Hackensack adopted an ordinance (referred to as ordinance No. 113) providing for the extension of Berry street, from State street easterly to River street—a distance of two blocks—said ordinance further providing for the acquisition of nine parcels of land (described in said ordinance) necessary therefor and for the payment of the cost thereof. These lands were acquired between July 20th, 1931, and December 2d, 1931. Section 3 of said ordinance provides "that the aforesaid improvement shall be made as a local improvement and the cost thereof shall be assessed upon the property benefited thereby in the manner required by law." An appropriation for the prosecution of said improvement was also made under said ordinance. A further appropriation was made on April 4th, 1932.

The improvement authorized by the aforesaid ordinance having been completed, three commissioners were on April 18th, 1932, named by appropriate resolution, to make a proper assessment against the real estate that may have been benefited or increased in value by such improvement.

The assessment commissioners, after first having heard all parties who presented themselves to be heard, and having also entered upon and viewed the premises in their judgment benefited by said improvement, submitted their written report of assessment, which was accompanied by a map referred to therein, showing the lands benefited by said improvement. This report was on December 19th, 1932, adopted and confirmed, without alterations, by the governing body of the city. The cost of the improvement was reported as being in the sum of $289,772.53, of which the share of the city was $67,393.94 and the balance ($222,378.59) assessed against property owners. With but one exception, all property owners affected by said assessment, feeling aggrieved by said levy, appealed to this court from the respective assessments made against their individual property. The assessments levied against the property of Agnes M. Barkman and the Oritani Field Club for the improvement aforesaid were set aside, and subsequently, on *certiorari*, reduced by the

Supreme Court. *Barkman et al.* v. *City of Hackensack,* 114 *N. J. L.* 506; 177 *Atl. Rep.* 663.

Prior to the opening, Berry street was a public thoroughfare, running in a southerly direction, as far as State street. State street is but one block westerly from Main street, Main street being the principal business highway of the city. Berry street, as extended, begins at State street and continues at right angles with Main street and River street. River street runs parallel with Main street one block to the east. The street next to the south thereof is Camden street and the street to the north is Pacific street.

The appellants in this court in these present proceedings are the following:

(1) William A. O'Brien, as the owner of lots 3, 3A, 3B, 4A and 4B, in block 401A, was assessed the sum of $6,805.50. This property, prior to the acquisition of lands for the opening of Berry street, consisted of a track of land already having a frontage on Main street of approximately fifty-two and thirty-five one-hundredths feet by a depth of approximately one hundred and seventy-three feet. It is now fifty-five and forty-nine one-hundredths feet south from Berry street, as extended. A one-story brick building, including stores, is erected on this appellant's land.

(2) Overbridge Realty Corporation, as the owner of lot 4 in block 401A, was assessed the sum of $14,288.01. This property has a frontage of fifty-five and forty-nine one-hundredths feet on Main street, and with the opening of Berry street, it fronts on this latter street for a distance of one hundred seventy-six and sixty-nine one-hundredths feet.

(3) Christopher W. O. Schmults, as the owner of lot 23 in block 401, was assessed the sum of $21,663.44. The premises affected by this assessment are on the northerly side of Berry street (as opened) having a frontage on River street (previously opened) of one hundred and three feet and a frontage on Berry street aforesaid of two hundred and seven feet. This property is directly opposite that owned by the Oritani Field Club.

(4) Hanover Bond and Mortgage Company, the owner of

lot 6 in block 401, was assessed the sum of $11,736.03. The premises affected by this assessment are on the north side of Berry street, directly opposite the property of the Overbridge Realty Corporation mentioned in paragraph 2 hereinabove. The land charged with this assessment ($11,736.03) is at the northwest corner of Main street and Berry street, having a frontage on Main street of forty-six feet and one hundred seventy-eight and six-tenths feet on Berry street as now opened.

(5) Arkay Holding Corporation, as the owner of lot 7 in block 401, was assessed the sum of $6,720 on a tract of land heretofore fronting on Main street a distance of sixty-four feet and having a depth of approximately one hundred and eighty-one feet. With the opening of Berry street, this property is forty-six feet distant from said street, adjoining the property owned by the Hanover Bond and Mortgage Company aforesaid.

(6) 329-331 Main Street Corporation was assessed the sum of $6,622 as the owner of lot 31 in block 407. This property previously fronted on Main street for a distance of sixty feet and with the opening of Berry street, it became distant from the northerly side of Berry street sixty-six and thirty-five one-hundredths feet.

(7) Overbridge Realty Corporation, owner of lots 32 and 33C in block 407, was assessed the sum of $32,075.73. Before the opening of Berry street, this property fronted on Main street and after the extension of Berry street, the property became the northwest corner of Berry and Main streets, fronting on Main street sixty-six and thirty-five one-hundredths feet, and on Berry street two hundred and thirty-four and eighty-eight one-hundredths feet.

(8) Alice Eager, the owner of property at the northeast corner of Berry and State streets (lots 9 and 10, block 407), was assessed the sum of $13,312.45, the land having a frontage on State street of fifty-one and sixty-five one-hundredths feet and a frontage on Berry street of one hundred and eighty-nine and twenty-five one-hundredths feet. This property adjoins that owned by Agnes M. Barkman to the north and

is west of the property owned by Overbridge Realty Corporation as mentioned in paragraph 7 herein. The Barkman property is designated as lot 11 in block 407.

(9) Fox Metropolitan Playhouse, Incorporated, as the owner of an "L" shaped plot fronting on Main street a distance of thirty-two feet (lots 6A, 7A, 8A, 34B and 33A in block 407A), was assessed the sum of $39,672.41. With the opening of Berry street, this property became distant approximately eighty-three feet from the corner of Berry and Main streets. With the extension of Berry street, the northerly boundary of this land obtained a frontage on Berry street of two hundred and one and one one-hundredths feet. This property (on Main street) adjoins that owned by the Main Street Hackensack Corporation.

(10) Overbridge Realty Corporation, as the owner of lots 6, 7 and 8B in block 407A, was assessed the sum of $11,443.58. All of these lots front on State street and with the opening of Berry street lot 8B obtained a frontage on Berry street of eighty-six and eighteen one-hundredths feet becoming the southeast corner of Berry street and State street. Lot 8B fronts on State street a distance of eleven and twenty-nine one-hundredths feet, lot 7 fronts on State street fifty-six and fifty-six one-hundredths feet, having a depth of eighty-six and forty-seven one-hundredths feet and lot 6 fronts on said street a distance of fifty feet, having a depth of eighty-six and sixty-nine one-hundredths feet.

On June 20th, 1934, an order was entered by this court substituting Anna Marie Borg, as an appellant in these proceedings, in so far as the assessment against lot 7 in block 407A is concerned, it appearing that she acquired title to said lot.

(11) The Main Street Hackensack Corporation, as the owner of property located at the southwest corner of Berry street and Main street (lots 33A and 34 in block 407A), was assessed the sum of $29,197.79. These premises have a frontage on Main street of eighty-two and eighty one-hundredths feet and with the extension of Berry street obtained a frontage thereon of one hundred and eight and forty-four one-hun-

dredths feet. This property adjoins that of the Fox Metropolitan Playhouses, Incorporated.

The assessment against the Oritani Field Club, as the owner of lot 1, block 401A, was in the sum of $23,221.65, while the assessment against the property owned by Agnes M. Barkman (lot 11, block 407) was in the sum of $3,740. These assessments were set aside by the Supreme Court on May 28th, 1934. *Oritani Field Club* v. *City of Hackensack,* 12 *N. J. Mis. R.* 490; 172 *Atl. Rep.* 805.

The appellants herein, also Oritani Field Club, Agnes M. Barkman and one Richard E. Knapp, are all of the owners of the properties assessed under the ordinance providing for the extension of Berry street and the payment of the cost of its acquisition by assessment thereof as a local improvement on the properties benefited thereby. Knapp is the only owner who did not appeal from the assessment levied for this improvement.

Hearings in these proceedings here under consideration were conducted for a period of eleven days, testimony taken consisting of one thousand two hundred and forty-six pages and fifty-six exhibits being introduced in evidence. Twelve witnesses testified in behalf of the appellants and respondent herein. Without commenting further on the subject, it should be noted for the attention of counsel, that it is now elementary that "who is an expert on the value of land, under our decisions, must be left very much to the discretion of the trial judge; his decision is conclusive, unless clearly shown to be erroneous in matter of law." *Ross* v. *Commissioners Palisades Interstate Park,* 90 *N. J. L.* 461; 101 *Atl. Rep.* 60. It was not necessary for counsel to conduct so lengthy an examination in the instant case in order to ascertain the qualifications of one of the real estate experts who testified in these proceedings.

Experts, properly qualified, testified as to the benefits received by the respective properties from the improvement aforesaid—the experts in behalf of the city endeavoring to justify the amount which the assessment commissioners imposed, the experts in behalf of the appellants submitting

figures which in their opinion indicate the estimated value of the benefits received. The estimated value of the benefits as given by the experts in behalf of the appellants are less than that offered in behalf of the city.

One of the witnesses for the respondent estimated the value of the benefit through speculative conjecture—"increase of value through assemblage," "all rights and expectations to get," "possibility of utilizing the rear portion to its highest usefulness," "Arkay to acquire lot 7," &c. Such estimate predicated on speculative conjecture is unsound. Mere speculative benefits are not, in reality, benefits. The benefit is determined by the increase in value for the present use of the property. *Kellogg* v. *Elizabeth,* 40 *N. J. L.* 274, 276; *Barkman* v. *Hackensack,* 114 *N. J. Law* 506; 177 *Atl. Rep.* 663.

In disposing of the subject-matter of these appeals, this court has been aided by the several briefs submitted by counsel for the respective appellants, as well as by the brief submitted in behalf of the respondent city, through its counsel. The attention of the court has also been directed to the recent decision of the Supreme Court affecting property similarly situated. *Barkman* v. *City of Hackensack; Oritani Field Club* v. *City of Hackensack,* 114 *N. J. L.* 506; 177 *Atl. Rep.* 663.

From a very careful examination of all of the testimony and evidence properly admissible and submitted in the case at bar, this court is of the opinion that the assessments imposed upon the properties of the respective appellants are greatly in excess of the peculiar benefit derived from the opening and extension of Berry street. An assessment is imposed for an improvement specially beneficial to the individual property assessed and can only be justified when proportioned to such benefits. Any cost beyond that measure must be imposed on the public at large. General benefits are not assessable. The special benefit which legalizes an assessment must be a present benefit immediately accruing and represents the difference between the market value of the lands before the improvement and the market value of the

lands immediately after the improvement. Where the assess-ment levied is fair and just, having due regard to the value of the lands and real estate benefited and proportioned to the benefit peculiar to the property assessed, such an assessment when imposed, should not be disturbed.

Improvement assessments are invalid when not imposed for and within the limits of special benefits derived from the improvement. *State (Reynolds)* v. *Paterson,* 48 *N. J. L.* 435; 5 *Atl. Rep.* 896. In order to sustain an assessment, it must affirmatively appear that the assessment is not in excess of the peculiar benefit, advantage or increase in value which the land received by reason of such improvement. *Becker* v. *Garwood,* 96 *N. J. L.* 327; 115 *Atl. Rep.* 334. The bene-fits must be immediately accruing, tested by the influence of the improvement on the present market value of the proper-ties. *State (New Jersey R. and T. Co.)* v. *Elizabeth,* 37 *N. J. L.* 330; *State (Kellogg)* v. *Elizabeth,* 40 *Id.* 274; *State (Morris)* v. *Bayonne,* 53 *Id.* 299; *In re Raymond Plaza, &c.,* 12 *N. J. Mis. R.* 303; 171 *Atl. Rep.* 538. Bene-fits arising from improvements which depend upon con-tingencies and future action of public authorities should not be considered in estimating the assessment. It follows, there-fore, that property of the appellants could be charged with a fair and just assessment only to the extent that it was bene-fited by the extension or opening of the new street. The assessments heretofore imposed (*supra*) upon the individual properties of the respective appellants was neither fair nor just and the charge made against said properties was in excess of their proportionate increase in value. The lands in question did not receive the "peculiar benefit or advantage" in the sums imposed as assessments thereon. These several assessments must be accordingly reduced to a sum represent-ing the difference between the market value of the lands before the opening of Berry street and the market value of said respective lands immediately after said improvement.

(1) The property of William A O'Brien, a one-story brick building with stores, was assessed $6,805.50. The appellant contends that this property not being adjacent to the new

street, derived no benefit from the acquisition of lands for the opening of Berry street, or from the actual improvement thereof. Witnesses called by this appellant testify that there was no increase in value due to the new street. The witnesses in behalf of the respondent claim a benefit in the sum imposed as an assessment as above. While corner lots and the land bordering the opened street are necessarily increased in value, it must also affect the value of the contiguous property within the immediate vicinity of the opened highway. While this property already had a frontage on Main street, it derived some benefit from the opening of Berry street. That benefit, so derived, was not in the sum of $6,805.50. The assessment against this property will be reduced—the new assessment being fixed at $1,500.

(2) The property of the Overbridge Realty Corporation (vacant plot) designated as lot 4 in block 401A is on the southeast corner of Berry and Main streets and obtained "corner influence" through the opening of Berry street. Because of this benefit so received, the property, in the opinion of this court, increased in value and accordingly the assessment against this property will be awarded in the sum of $6,000 and the assessment heretofore imposed reduced to this sum.

(3) The property of Christopher W. O. Schmults is located on the northwest corner of Berry street and River street, being directly opposite the Oritani property, which is on the southeast corner of said streets aforementioned. With the opening of Berry street, this property became a corner, and by reason thereof its value was enhanced, for that the land became more desirable to purchasers and created a convenience which the owner did not otherwise have. The estimated value as assessed does, however, greatly exceed the benefit special and peculiar to this property. The assessment against this property will be allowed in the sum of $12,500.

(4) The Hanover Bond and Mortgage Company property, with the opening of Berry street became corner property, although it previously fronted on the principal thoroughfare known as Main street. Witnesses called by this appellant con-

cede that this property was benefited by the acquisition of the land and extension of Berry street aforesaid, but differ as to the amount thereof. This court is of the opinion that an assessment against this property in the sum of $4,500 will be both fair and just, and this assessment is accordingly decreased to said amount.

(5) The property of Arkay Holding Corporation is located on Main street and like the O'Brien property, it benefited from the extension of Berry street by reason of it being contiguous to the Hanover property bordering on the opened street. The Arkay property is but forty-six feet from the northwest corner of Berry street, while the O'Brien property is fifty-five and forty-nine one-hundredths from the southeast corner of said street. The assessment against the Arkay property will be awarded in the sum of $1,600.

(6) 329-331 Main Street Corporation premises: This property was always on the leading highway of the city (Main street) and with the opening of Berry street, it received the benefit of proximity to the northwest corner of Berry and Main streets only. The estimated value of this property, as given by the experts called in behalf of this appellant, is the same before and after the opening of the new street—in their opinion no benefit or increase in value whatsoever. With this conclusion, this court cannot concur. An assessment in the sum of $1,200 will be imposed as a charge against this property. The assessment is accordingly fixed in this amount ($1,200).

(7) Overbridge Realty Corporation, lots 32 and 33C in block 407: The benefit to this property from the improvement forming the subject-matter of this appeal, is frontage on Berry street—it already had a frontage to the extent of sixty-six and thirty-five one-hundredths feet on Main street. All witnesses are in accord that this property has been benefited by the improvement aforesaid, but they do not agree as to the amount. The estimated value of benefits range from $9,951 to $33,545.92. This latter amount is grossly excessive; the lower figure, inadequate. A fair and just charge is $15,000. The previous assessment will be accordingly reduced to this award.

(8) The property of Alice Eager, which has had an assessment imposed upon it in the sum of $13,312.45, has not, in the opinion of this court, increased in value to that extent. Assessment against this property will be awarded in the sum of $6,000.

(9) The Fox Metropolitan Playhouses, Incorporated, property differs in use, shape and location from the other properties in these proceedings. The theatre building occupies the entire plot purchased by it, the entrance being on Main street, approximately eighty-three feet from the southwest corner of Berry and Main streets. The Fox company entered into an agreement on November 2d, 1929, to purchase a plot of ground for the erection of a theatre at an agreed purchase price. After making this contract the Fox company was induced to substitute a similar plot adjacent to this original site beause Berry street as contemplated would have bisected the rear rectangular portion of the plot agreed to be conveyed. Accordingly an amended contract was entered into on February 17th, 1930, by which the present Fox plot, having practically similar dimensions, and with frontage on Berry street, was substituted for the original plot. The northerly boundary of this substituted plot was located upon the building line of the southerly side of Berry street as would be opened, thus making the extension of Berry street possible without bisecting the Fox company site. The substituted plot was purchased for the identical amount provided in the original contract. The substituted plot was described as land fronting on Berry street.

As hereinabove indicated, this property—prior to the opening of Berry street—already had a frontage on Main street. With the opening of Berry street, it received added frontage on Berry street, which it utilizes as an exit for its patrons. In case of fire, there might be an easier access to the theatre by reason of Berry street. The wall of this theatre, on the south side of Berry street, is what is termed a large blank wall, with fire escapes and doors.

The witnesses called by the appellant admit that this property has been benefited through the opening of Berry street,

but their estimated value of benefits so received is not in an amount proportionate to the benefit peculiar to this property. The figures submitted by the witnesses for the respondent are excessive.

This court concludes that the benefits peculiar and special do not exceed $15,000 and for this amount an assessment will be awarded. The assessment will be corrected accordingly.

(10) Overbridge Realty Corporation, lots 6, 7 and 8B, in block 407A: This property is on the southeast corner of Berry and State streets. It already had a frontage on State street. With the opening of Berry street, this property received substantial benefits, in that it received this added frontage and readier access to the main highway (Main street) of the city. These benefits so received, are also applicable to the Eager property, which is on the northwest corner of State and Berry streets.

The assessment against this property will be reduced to $6,500 (sixty-five hundred dollars).

(11) The Main Street Hackensack Corporation property, on the southwest corner of Berry and Main streets, received a benefit by the added frontage on the newly opened Berry street. It already fronted on Main street prior to this improvement. This property became a corner and as such increased in value.

The assessment against this property will be awarded in the sum of $13,500.