ALBERT L. DIAMENT, DEFENDANT IN ERROR, v. EUGENE
M. COLLOTY, PLAINTIFF IN ERROR.

Argued March 6, 7, 1901—Decided June 17, 1901.

1. Where slips containing reports of work done and the cost of the
same, and of the amount and kind of materials used, are part of
a method of carrying on business, they are competent evidence,
when offered in connection with the books of account of the busi-
ness.

2. A book of account made up in the usual course of business in part
from reports of work done and amount of materials used, is compe-
tent evidence, in connection with the reports as part of a system
of carrying on business, to prove claims for materials and labor.

3. In a suit upon a contract, the question of the person with whom
the contract was made should be distinctly left to the jury when
the question appears by the evidence to be disputed.

On error to the Atlantic Circuit.

For the plaintiff in error, *George A. Bourgeois.*

For the defendant in error, *Allen B. Endicott.*

The opinion of the court was delivered by

GARRETSON, J. The plaintiff, trading as A. L. Diament
& Company, was engaged in the business of furnishing wall
paper, mouldings and paints and of hanging wall paper, put-
ting up mouldings and doing fresco painting. His place of
business was in Philadelphia, and the work out of which this
suit arises was done upon two houses of the defendant in
Atlantic City and occupied several days.

According to the plaintiff's system of business, the person
in charge of the work was held responsible for the paper and
materials sent to be used and they were charged to him in
the first instance. As the work progressed or upon its com-
pletion he made a report of the quantity of paper and ma-
terials used and of the cost of doing the work, using blank
slips furnished by his employer. Nothing appeared on these

slips showing the amount charged to the customer for the paper and materials used. The quantity and a designation of the kind by a number was therein set forth.

These slips or reports being sent to or delivered at the plaintiff's place of business, came into possession of his book-keeper, and he, with them before him, entered in a book, called "work order day-book," the entire charge against the customer for paper and materials as well as for the work done. The entry in this book was not an exact copy of the slips, but contained all the items thereon and in addition thereto the amount due from the customer for each item of paper and materials used.

In the present case the entries in the day-book were made on two successive days, both of which were more than twenty days after the entire work was completed.

The slips or reports were first offered in evidence, and were admitted over the objection of the defendant, and this admission is assigned for error. The day-book was subsequently offered, and its admission against the objection of the defendant is also assigned as error. The ledger of the plaintiff was also offered and admitted.

The slips cannot be regarded as a book of original entry; they were, in reality, no more than memoranda which might be used by a witness for the purpose of refreshing his memory, but could not of themselves, standing alone, be competent evidence of the facts therein contained, and if nothing else appeared their admission would have been error, but they were a part of the system under which the plaintiff conducted his business.

The day-book was competent evidence; the entries therein appear to have been made within a reasonable time after it was ascertained what the proper charges were against the defendant. The work in question was carried on at a long distance from the plaintiff's store and place where his books and bookkeeper were, and the items of materials and labor might not be ascertained so as to be capable of proper entry in any book as a charge against the customer until some time after the job was completed. The entries in this book appear

to have been made in the usual course of business according to the system and method adopted by the plaintiff. The entries were made in the day-book from information derived largely from these slips or reports, and the book being competent evidence, the slips, as the source of the information, together with the ledger, which was a condensation of the day-book, all forming together part of a system of carrying on business, all became competent testimony when all were admitted in evidence.

We find no error in the admission of the slips and day-book.

The claim of the plaintiff was for work and materials furnished to the defendant.

The plaintiff testified that one Eggman wrote him that he had several jobs in Atlantic City that he didn't feel that he would be able to handle, and he wanted to know if he would get the business and turn it over to the plaintiff, the plaintiff would give him a commission, and the plaintiff said he would; that the plaintiff went to Atlantic City and saw the defendant and told him that he (the plaintiff) was doing the work, and that he didn't want the defendant to pay any money except to the plaintiff; that after that he shipped the paper and sent men down to hang it, charged the bill to the defendant and sent it to him; that the amount of the bill was $191.36, upon which a credit of $5 was allowed, leaving a balance of $186.36.

The defendant testified that he employed Eggman, who had done similar work for him in his hotel, to do the work upon these two houses, upon the same terms as he had done the work on the hotel—that is, the cost of the materials and so much per day for labor; that eight or ten rooms in the two houses were papered with paper left over from the hotel; that Eggman rendered him a bill for $135 for work and materials in the two houses, and that he had paid him $100 on account of it; that the first he knew that the plaintiff claimed any interest in the work was when it was almost finished, and the plaintiff came to see him and told him not to pay Eggman any more money, and he supposed that re-

quest was made because Eggman had got the materials from the defendant; that, at the time of the plaintiff's visit to him, he had paid Eggman $95 on account of the work, and that the first he learned that plaintiff claimed Eggman was his agent was when the court met.

It was, therefore, a question of the first importance in the case for the jury to determine whether the defendant contracted with the plaintiff or with Eggman.

The judge charged the jury as follows:

"Gentlemen, this case depends altogether upon the confidence or belief that you have in the testimony of these parties. You have heard all the testimony upon this subject. If Diament & Company notified Colloty not to pay, the money paid prior to that notice cannot be recovered by Diament & Company of Colloty. It all turns upon when that notice was given. They don't fix the time positively, but you are to gather from the testimony when that time was that Diament & Company notified Colloty; and you take the whole of the testimony. If they did notify Colloty before any of the work was done on those goods, if they gave him notice that that was their business transaction, it was their work, it was their contract, and not to pay Eggman, then, of course, if they admit that, Colloty had no right to pay, and he would have to lose. But if, at the time they notified him, he had no notice of this arrangement between this workman (Eggman) and this firm in Philadelphia, then only for that which remained due for their account after that notice would they recover.

"Now, they say they owed this man $130, and $95 was paid. My notion about it is that if these people notified him, whenever it was, not to pay, then the balance of the account which was due to them was to be paid by Colloty. He says (and upon that part of the case his testimony stands there, and I don't see how anybody is to refute it—no one knows—he is the only one that does know) at that time there was $95 paid. Their account is $186.36, and $95 having been paid, the balance would be $91.36—the balance of that account. And I don't see why, under the circumstances of the case,

having withheld this thing subject to settlement, why, even according to that statement, the balance of $91.36 would not be the amount that the plaintiff would be entitled to, with interest from April 22d, 1896—that is, providing that Colloty had had notice. Then, of course, whatever he had paid to this man prior to that date they ought not to pay over again. And I say it is upon that bill of $186.36, and I so charge you, and that the $95 should go out of that if this man had no notice and the balance of $91.36 would be the amount the plaintiff should recover, with interest from April 22d, 1896. But if he had notice and paid those moneys after he knew that these people were the principals, he paid at his peril, and they ought to recover the full bill, and you have to determine that from the facts. This is the way I leave the case to you."

Thereupon counsel for the defendant requested the judge to charge "that if the original contract was given by Colloty to Eggman, that Colloty is not responsible to Diament & Company for anything," and in response the judge said, "No, I do not think that is correct, because if it was given to him with the understanding that at the time they were to get their goods of Diament & Company, then I can't see why this man (Colloty), knowing that fact and having notice to pay to them, why he was not obliged to hold that money. That is the way it strikes me."

"Now, gentlemen, you will have to take that case and make out of it what you think is fair and right under the proof that they have given you. I understand that the claim is $186.36, with interest from April 22d, 1896."

The defendant was certainly entitled to have the question contained in counsel's request distinctly put to the jury. The response of the judge to that request might very well lead the jury to suppose that that question was not in the case at all, and that the important question was, and it seems to be regarded in all the charge preceding the request, when the plaintiff notified the defendant that he was doing the work.

But the question of the request was certainly in the case, because, while the plaintiff claims the amount of the contract

to be $186.36, the defendant says it was $130, and the judge in his charge, when making a calculation for the jury, assumes it to be $186.36.

We think that for this failure to submit the question distinctly to the jury there was error, and the judgment should be reversed.

MAGIE, CHANCELLOR (concurring).

I concur in the view expressed in the opinion of Mr. Justice Garretson, that reversible error is disclosed in respect to the refusal of the trial judge to properly submit to the jury the question whether defendant had employed plaintiff to do the work for which compensation was sought.

I also agree that the books of account offered by plaintiff were properly admitted in evidence. While the entries in the day-book were made some time after the work was done, they were made, under the circumstances, in the due course of business, and were an itemized record of work done and materials furnished. The doctrine applied in the Supreme Court, in the case of *Rumsey* v. *New York and New Jersey Telephone Co.,* 20 *Vroom* 322, is not applicable.

But I am unable to agree with the view that the "slips" were properly received in evidence. On the contrary, I think their admission was reversible error. If Pike, the foreman, who made up the "slips," had signed them, they might have been admissible after his death, on proof of his signature, as evidence, at least, of the delivery of materials, on the authority of the leading case of *Price* v. *Earl of Torrington, Salk* 285; 1 *Sm. Lead. Cas.* *139. But Pike was living, and a witness in the cause. Having his memory refreshed by the memorandum made by him, he could properly have testified to the actual work done and materials used in the job, item by item. But plaintiff did not attempt to prove his case thus. On the contrary, he offered the slips as original and independent testimony, against defendant's exception. The court admitted them as evidence, and in doing so committed, in my judgment, reversible error. Under the circumstances, the slips were not evidence of anything. They were like the "blotter

sheets" containing diary entries of the acts of parties, which were declared by the present Chief Justice to be proper to be used to refresh the recollection of a witness having knowledge of the facts, but to be incompetent as testimony. *Lindenthal* v. *Hatch,* 32 *Vroom* 29.

That the slips were made in the course of business affords no justification for their admission as evidence. It will prove, I fear, a dangerous innovation on the rules for the admission of evidence to approve of the admission, as independent testimony, of every memorandum made by workmen, although in the ordinary course of business.

*For affirmance*—HENDRICKSON, KRUEGER. 2.

*For reversal*—THE CHANCELLOR, VAN SYCKEL, DIXON, GARRISON, GUMMERE, COLLINS, FORT, GARRETSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM. 13.