726 A.2d 968 (1999)
320 N.J. Super. 59
CAMDEN COUNTY ENERGY RECOVERY ASSOCIATES, L.P., a New Jersey Limited Partnership, Plaintiff-Respondent,
v.
NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION and New Jersey Department of Community Affairs, Division of Local Government Services, Defendants-Appellants,
and Board of Chosen Freeholders of the County of Camden, Pollution Control Financing Authority of Camden County, and Camden County Improvement Authority, Defendants-respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1999.
Decided April 7, 1999.
James H. Martin, Deputy Attorney General, for defendants-appellants (Peter Verniero, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mr. Martin and Daniel P. Reynolds, Deputy Attorney General, on the brief).
Robert G. Millenky, Blackwood, for defendant-respondent Board of Chosen Freeholders of Camden County (Mr. Millenky, attorney; Deborah Silverman Katz, on the brief).
*969 Gage Andretta, Roseland, for plaintiff-respondent Camden County Energy Recovery Associates, L.P. (Wolff & Samson, attorneys; Mr. Andretta and Stephen Bier, on the brief).
William M. Tambussi, Westmont, for defendants-respondents Pollution Control Financing Authority of Camden County and Camden County Improvement Authority (Brown & Connery, attorneys; Mr. Tambussi and Susan M. Kanapinski, Mount Holly, on the brief).
Before Judges LONG, WEFING and CARCHMAN.
The opinion of the court was delivered by WEFING, J.A.D.
In Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 931 F.Supp. 341, 358 (D.N.J. 1996), the district court struck down as unconstitutional under the dormant commerce clause (U.S. Const. art. I, § 8, cl. 3) a body of New Jersey law designed to regulate and control waste flow and disposal within the State. (The district court referred to the applicable law as the New Jersey Solid Waste Management Act, N.J.S.A. 13:1E-1 to -207; the Solid Waste Utility Control Act, N.J.S.A. 48:13A-1 to -13; and the regulations accompanying those statutes. Id. at 342. On appeal, this was further narrowed to N.J.A.C. 7:26-6.5. Atlantic Coast Demolition & Recycling, Inc. v. Board of Chosen Freeholders of Atlantic County, 112 F.3d 652, 668 (3d Cir.1997), amended, 135 F.3d 891 (3d Cir. 1998)). Recognizing the significant impact its holding would have within the State, which had, over the preceding twenty years, constructed a closely regulated system of waste flow control, the district court concluded that it would be appropriate to stay, for a period of two years, its injunction against enforcement of these laws. The stay would have provided the State an opportunity to devise appropriate alternatives. Atlantic Coast, supra, 931 F.Supp. at 358. On appeal, however, the court of appeals affirmed the holding of unconstitutionality but dissolved the two-year stay. Atlantic Coast, supra, 112 F.3d at 669. It specifically refrained from addressing the merits of claims such as those presented here. Atlantic Coast, supra, 135 F.3d 891. The United States Supreme Court denied certiorari. Essex County Utilities Authority v. Atlantic Coast Demolition & Recycling, Inc., ___U.S.___, 118 S.Ct. 412, 139 L.Ed.2d 316 (1997).
This matter is one of many filed in the wake of Atlantic Coast to sort out that decision's consequences. The matter is before us, pursuant to leave granted, from an order entered by the trial court denying the State's motion to dismiss the complaint for failure to state a claim. After carefully reviewing the record in this matter and considering the arguments advanced by the parties, we have concluded that the trial court erred in denying the State's motion. We therefore reverse and remand with directions to dismiss all claims and cross-claims against the State.
The policy considerations and the economics that served as the basis for New Jersey's adoption of a policy of self-sufficiency in waste flow control and waste disposal are fully set forth in the district court's opinion and we will not restate them at length here. See Atlantic Coast, supra, 931 F.Supp. at 346-49. We concentrate rather on their particular application in this matter.
Plaintiff Camden County Energy Recovery Associates (CCERA) is a private partnership that in 1987 received a franchise from the then-Board of Public Utilities (BPU) for the disposal of acceptable solid waste from twenty-six municipalities in Camden County. In return, it agreed to develop and operate a resource recovery facility in Camden County. Construction of the facility was financed in part through bonds issued by the Pollution Control Financing Authority of Camden County (PCFA). A small percentage of PCFA's bonds were guaranteed by Camden County; none were guaranteed by the State of New Jersey.
Tipping fees, approved by the New Jersey Department of Environmental Protection (DEP), were charged by CCERA for the disposal of waste at the facility. These fees were computed to provide a reasonable return for CCERA and to pay off PCFA's bonds. Similar techniques were adopted throughout the State, with the result that the *970 fees charged for required in-state waste disposal at times exceeded the fees that would have been incurred if the waste had been transported and disposed across state lines.
A practical consequence of the Atlantic Coast decisions was that resource recovery facilities that had been constructed as part of New Jersey's waste flow scheme (such as the one in Camden County) were no longer guaranteed to receive a certain quantity of waste as had been the case prior to Atlantic Coast. As a result, the guaranteed revenue stream that had flowed from CCERA's exclusive rights and that had served as the source of return for the operator and the source of repayment for the bondholders was jeopardized.
As a further consequence of the Atlantic Coast decisions, County of Camden revised its solid waste management plan to correct what had been held to be unconstitutional. It submitted its revised plan to the Department of Environmental Protection (DEP), which certified the plan in due course.
After the district court and the court of appeals struck down New Jersey's waste flow system, PCFA solicited new bids for operation of the resource recovery facility. CCERA commenced this action to restrain PCFA from opening those bids until it was determined whether the public entities would hold CCERA responsible for some portion of the facility's outstanding indebtedness. The trial court held two hearings on this issue; although the court refused to issue temporary restraints against the bidding, certain clarifications were obtained by CCERA.
Defendants all filed answers; County of Camden and PCFA included counterclaims and cross-claims in their responsive pleadings. When the parties sought discovery from the State, who participated in this action through the Department of Community Affairs (DCA) and the DEP, the State moved to dismiss all claims against it for failure to state a claim upon which relief could be granted. R. 4:6-2(e).
At the time the State's motion was heard, only three counts of plaintiff's complaint remained outstanding before the trial court. In the first of these, CCERA sought to enjoin County of Camden from implementing its amended solid waste management plan and PCFA from proceeding with its solid waste disposal procurement process. In the second, CCERA sought a judgment declaring that it had no further responsibility under the earlier contracts executed in connection with the operation of the resource recovery facility. In the last remaining count, it sought an order allocating the potential economic loss among all defendants. PCFA and County of Camden asserted cross-claims against the State seeking indemnification for any loss they might incur.
After extensive oral argument, the trial court reserved decision and placed an oral opinion on the record the following day. The trial court noted the extraordinary nature of CCERA's requested relief and the New Jersey Supreme Court's oft-repeated cautions against granting a motion to dismiss at the outset of a proceeding. Printing Mart Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). It determined that, under such a standard, the parties should be permitted to engage in limited discovery to provide "an opportunity to determine what equitable basis or what relief should be considered and on what grounds."
While we recognize the trial court's understandable reluctance to deprive litigants of an opportunity to proceed, no party has articulated, either to the trial court or to us, a legal basis entitling it to relief against the State. Discovery is intended to lead to facts supporting or opposing an asserted legal theory; it is not designed to lead to formulation of a legal theory.
We are cognizant of the Court's assertions about motions to dismiss.
We have sought to make clear that such motions, almost always brought at the very earliest stage of the litigation, should be granted in only the rarest of instances. If a complaint must be dismissed after it has been accorded the kind of meticulous and indulgent examination counselled in this opinion, then, barring any other impediment such as a statute of limitations, the dismissal should be without prejudice to a plaintiff's filing of an amended complaint.

[Id. at 772, 563 A.2d 31.] *971 See also F.G. v. MacDonell, 150 N.J. 550, 556, 696 A.2d 697 (1997) ("If a generous reading of the allegations merely suggests a cause of action, the complaint will withstand the motion.") Here, however, no matter how "generously" or "indulgently" respondents' pleadings are scrutinized, the conclusion is inescapable that at bottom they are no more than a fundamental challenge to high-level policy decisions made over a course of years by representatives of the State, decisions for which the State should not be held judicially accountable to litigants.
CCERA contends that the action of the BPU in granting it an exclusive franchise for the collection of acceptable solid waste from certain Camden County municipalities created a contractual relationship between itself and the State. According to CCERA, the State therefore could be liable for damages for breach of that contract. We have no quarrel with the cases CCERA cites that characterize a franchise as a property right. Those cases are, however, inapplicable.
In Grand Trunk Western Railroad Co. v. City of South Bend, 227 U.S. 544, 33 S.Ct. 303, 57 L. Ed. 633 (1913), the City of South Bend unsuccessfully attempted to rescind an ordinance passed some years earlier granting the railroad the right to lay two sets of track through certain public streets. No claim for damages was asserted. State (Phillipsburg Electric Lighting, Heating, & Power Co.) v. Inhabitants of Town of Phillipsburg, 66 N.J.L. 505, 49 A. 445 (Sup. Ct. 1901), is similar; in that case the municipality sought to revoke its earlier permission allowing Phillipsburg Electric to erect electric poles and wires. Morris County Transfer Station, Inc. v. Frank's Sanitation Service, Inc., 260 N.J.Super. 570, 574-75, 617 A.2d 291 (App. Div.1992), involved a suit by the holder of a waste franchise for an injunction against improper diversion; no claims were asserted against the State. West Coast Disposal Service, Inc. v. Smith, 143 So.2d 352 (Fla. Dist.Ct.App.), cert. denied, 148 So.2d 279 (Fla.1962), is similar. Board of Fire Comm'rs of Fire Dist. No. 3, Piscataway Twp. v. Elizabethtown Water Co., Consol., 27 N.J. 192, 142 A.2d 85 (1958), upheld the authority of the Board of Public Utility Commissioners (BPU's predecessor) to order the defendant to extend its water mains to a certain area of the township even though the cost of doing so would exceed the return. Collingswood Sewerage Co. v. Borough of Collingswood, 91 N.J.L. 20, 102 A. 901 (Sup. Ct.), aff'd, 92 N.J.L. 509, 105 A. 209 (E. & A.1918), and City of Texarkana, Tex. v. Arkansas, Louisiana Gas Co., 306 U.S. 188, 59 S.Ct. 448, 83 L. Ed. 598 (1939), are both rate cases.
The only case CCERA cites in which damages were sought from a governmental entity for breach of contract is United States v. Winstar Corp., 518 U.S. 839, 116 S.Ct. 2432, 135 L. Ed.2d 964 (1996), a matter we consider wholly distinguishable. In that case, the Federal Home Loan Bank Board, at the time of the savings and loan crisis of the 1980's, promised institutions taking over a failing thrift that they could designate the excess of the purchase price of the failing thrift over the fair value of its identifiable assets as an intangible asset of supervisory goodwill that would count toward the purchasing institution's capital reserve requirements. Id. at 848-49, 116 S.Ct. at 2442-43, 135 L.Ed.2d at 975. Congress later passed the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (codified in scattered sections of 12 and 15 U.S.C.), that prohibited such a practice. Id. at 856-57, 116 S.Ct. at 2446, 135 L.Ed.2d at 979. Federal regulators then seized two savings and loan institutions that had insufficient capital reserve requirements because of their treatment of supervisory goodwill, and a third institution only avoided takeover through a private re-capitalization. Id. at 858, 116 S.Ct. at 2447, 135 L.Ed.2d at 980. The three then brought suit. In a plurality opinion the Court concluded that the United States could be held liable for damages for breach of specific, identifiable promises. Id. at 909-10, 116 S.Ct. at 2472, 135 L.Ed.2d at 1012-13.
Nothing within CCERA's franchise, however, is comparable to the facts of Winstar Corp. Rather, CCERA's franchise specifically provides that "[t]he Board is not precluded from reviewing and, if necessary, revising the terms of any such franchise award concurrent with the review of future financings." Concerning "the nature of the *972 guarantees given to CCERA by the parent companies of the two partners," the franchise agreement notes that "[t]hese guarantees offer a substantial bulwark against the possibility that the ratepayers, in the event of default on the financing, will bear the economic burden associated with such default." We are satisfied that Winstar Corp., supra, provides no authority for CCERA's claims in this matter.
The Atlantic Coast decisions have presented this State with a unique and difficult conundrum. It must devise a waste control and disposal policy that meets the constitutional imperatives established by the federal courts, that is environmentally sound and does not require ever greater appropriation of open space for land fills, that is fiscally prudent, and that can, in practical terms, be achieved. We are satisfied that piece-meal judicial consideration of claims asserted by parties alleging financial distress due to Atlantic Coast can only inhibit adoption of a necessary state-wide solution.
We note also that the State has not, after its loss in Atlantic Coast, retreated into its tent like a disheartened Achilles. It has been actively pursuing a state-wide resolution. Recognizing Atlantic Coast's fiscal impact, the Legislature has already appropriated significant sums for relief for the affected parties.
We are further satisfied that the claims asserted by the public entities against the State are similarly unavailing. Within their pleadings, those entities seek a judicial mandate that the State must absorb the prospective losses they face due to Atlantic Coast. However, they point to no authority justifying such extraordinary relief.
In short, the State's creation and implementation of a waste control and disposal policy may have been constitutionally flawed. That policy did not, however, create judicially-enforceable contractual rights for these litigants. These parties must approach the legislative and executive branches of government to obtain relief. To permit this case to proceed would represent an inappropriate judicial incursion into the responsibilities of co-ordinate branches of government.
Reversed.