NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0047-25

TOWN OF DOVER,

      Plaintiff-Respondent,

v.

RICHARD GONZALEZ,

      Defendant-Appellant.

_____

<table>
<tr><td>APPROVED FOR PUBLICATION<br>May 21, 2026<br>APPELLATE DIVISION</td></tr>
</table>

Argued January 21, 2026 – Decided May 21, 2026

Before Judges Gooden Brown, DeAlmeida and
Torregrossa-O'Connor.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Morris County,
Docket No. L-0330-25.

Richard P. Flaum argued the cause for appellant (Di
Francesco Bateman, attorneys; Richard P. Flaum, on
the brief).

Jonathan F. Cohen argued the cause for respondent
(Plosia Cohen LLC, attorneys; Jonathan F. Cohen, of
counsel and on the brief; Veronica A. Acevedo, on the
brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

On leave granted, defendant Richard Gonzalez appeals from the July 18, 2025 Law Division order dismissing with prejudice his counterclaim seeking relief under the Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49 to -61.  We vacate the July 18, 2025 order and remand for further proceedings.

I.

On August 15, 2014, defendant filed a complaint in the United States District Court against plaintiff Town of Dover.  Defendant, then a sergeant with the Dover Police Department (DPD), alleged violations of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14, and the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.  He alleged he suffered harassment and retaliation at work in response to, among other things, his:  (1) supporting a Dover mayoral candidate challenging the then-incumbent mayor; (2) posting a comment on social media critical of the then-incumbent mayor; (3) reporting to the Morris County Prosecutor's Office that the then-mayor and town administrator were involved in the systematic dismissal of traffic tickets issued to their friends and associates; (4) complaining to superiors about interference with DPD internal affairs investigations; and (5) investigating the theft of time by DPD detectives.

On December 10, 2015, plaintiff and defendant executed a settlement agreement resolving the federal litigation. In exchange for $175,000, defendant agreed to retire from his position at the DPD, and release plaintiff and the DPD from all claims he alleged in the complaint and may otherwise have had against them. The parties also agreed on the terms of defendant's retirement, including permitting him to remain on administrative leave with full pay for approximately nine months before retiring.

The settlement agreement included a non-disparagement provision, which referred to defendant as "Employee[,]" and plaintiff and the DPD as "Employer[,]" and provided:

> The Employee agrees that he will not make any negative comments or disparaging remarks, in writing, orally or electronically, about the Employer or any other Releasee, including their respective officers, directors, and employees. Nothing in this paragraph or this Agreement shall be interpreted to restrict or inhibit the Employee's right and obligation (i) to testify truthfully in any forum or (ii) to cooperate fully in any investigation by a governmental agency. Similarly, the Employer agrees that it will not make any negative comments or disparaging remarks, in writing, orally or electronically, about the Employee. Neither the Employee nor the Employer shall refer to themselves or to the other party as the winning or losing party regarding the Lawsuit.

The agreement defined "Releasee" as "the Employer and its past, present and future officers, officials, council members, administrators, directors, attorneys,

A-0047-25

employees, insurers, reinsurers, agents, and their respective successors and assigns . . . ."

According to defendant, in the years after executing the settlement agreement, he published numerous comments regarding plaintiff, its officials, and employees on social media sites. He disseminated comments, news articles, videos, and other information on what he characterized as matters of public interest in Dover, including allegations of excessive use of force by DPD officers, misuse of public funds, and misconduct by public officials. Defendant also submitted public records requests seeking information on payments plaintiff's officials made to attorneys, and DPD police reports concerning members of plaintiff's governing body. Defendant published the information he received in response to his public records requests.

On February 15, 2024, more than eight years after executing the settlement agreement, plaintiff sent a letter to defendant alleging he "embarked on authoring various social media posts disparaging the Town of Dover, various elected officials and/or employees" in violation of the non-disparagement provision. The letter demanded defendant cease and desist from making further disparaging remarks in violation of the provision and remove all his prior social media posts disparaging plaintiff and its elected

4                                                                    A-0047-25

officials and employees.  Defendant did not respond to the letter and continued to make social media posts concerning plaintiff, its officials, and employees.

About a year later, on February 5, 2025, plaintiff filed a verified complaint and order to show cause (OTSC) in the Law Division.[1]  Plaintiff alleged defendant breached the non-disparagement provision by posting on social media "numerous negative comments and/or disparaging remarks" about plaintiff's officials and employees, including the then-mayor and town clerk.  Plaintiff alleged defendant's posts were "all negative insults, and included a wide range of allegations without evincing credible evidence of any kind."

The examples cited in the complaint were social media posts by defendant stating:  (1) the town clerk was "the worst municipal clerk ever.";  (2) another commenter was "quick to judge this man but not the official misconduct of little penis Dodd," referring to Dover Mayor James P. Dodd; (3) "Jim Dodd is synonymous with . . ." followed by a feces emoji; (4) "2025 the year of the people!  Free from the tyrannical Dodd, little dick energy, administration . . . ."; (5) "Dodd and [then-Dover Councilmember Sergio Rodriguez] won't comment.  Because it makes them look like a (sic) shitbags

---

[1]  In January 2025, plaintiff moved to enforce the non-disparagement provision in federal court.  That court did not consider the motion because the settlement agreement did not include a provision retaining the court's jurisdiction to enforce its terms.

they are . . . ."; (6) "Employees being held accountable in Dover? How about Clerk Tara Pettoni, aka Dudd called 'my Donna . . . .'" (Dudd is a name defendant sometimes used for Dodd); (7) about a town employee, "How many times can the elected official praise his girlfriend in a public meeting? . . . . These two are sleeping together and he's praising her like she's something great. . . . She gets paid . . . to hang out with her boyfriend all day and go to events that are not her job. . . . Isn't there a conflict of interest here? She's getting paid to hang out with her Dudd."; (8) an unspecified "lawsuit details exactly what Dodd is. An abusive cowardly man towards a woman . . ."; and (9) "the disgraceful, corrupt faces of Little Dick Energy. Recall 2025!" under a photo of Dodd and Rodriguez.

Plaintiff alleged, with these and other social media posts, defendant violated the non-disparagement provision by "proliferating nonstop negative and disparaging attacks against plaintiff, its officials and employees." The posts, plaintiff alleged, "are designed to insult and demean" plaintiff's officials, "harm their reputation and interfere with the[] professional standing of [plaintiff's] employees with the community, in addition to potentially harming future job prospects of certain disparaged employees."

In addition to breach of contract, plaintiff alleged defendant's conduct invalidated the settlement agreement. Plaintiff sought to enjoin defendant

A-0047-25

from making further negative and disparaging social media posts about plaintiff, its officials, employees, and other releasees in violation of the non-disparagement provision. Plaintiff also sought damages and disgorgement of the $175,000 it paid defendant under the settlement agreement.

Defendant filed an answer, counterclaim, and OTSC. In his single-count counterclaim, defendant sought dismissal of the complaint under UPEPA. He alleged the social media posts cited in the complaint were political speech protected by the First Amendment, and the complaint was intended, not to enforce the nearly decade-old settlement agreement, but to suppress defendant's speech and intimidate him from participating in public debate on matters of public concern in Dover. Defendant sought dismissal of the complaint and the award of counsel fees and costs.

On April 4, 2025, the motion court issued a written decision granting plaintiff's request for preliminary injunctive relief. The court concluded plaintiff established by clear and convincing evidence it was likely to succeed on the merits of its breach of contract claim. The court noted it is undisputed the parties entered the settlement agreement and plaintiff fulfilled its obligation to give defendant $175,000. In addition, the court found plaintiff established defendant breached the non-disparagement provision by making disparaging comments about plaintiff's officials and employees. The court did

A-0047-25

not address the meaning of "negative comments or disparaging remarks" in the non-disparagement provision or explain how it determined the social media posts alleged in the complaint violated the provision. In addition, the court found: "Despite [d]efendant's contention that he cannot be prevented from engaging in political discourse, the court does not conclude that many of [d]efendant's comments can be reasonably interpreted as political discourse. Rather, certain posts are clearly disparaging."[2]

The court also concluded plaintiff was likely to establish it suffered damages from defendant's breach because it paid him consideration in exchange for his agreement to abide by the non-disparagement provision, which he subsequently violated. With respect to irreparable harm, the court found in the absence of preliminary injunctive relief, the non-disparagement provision "will be rendered meaningless" and plaintiff and its officials and employees will continue to suffer reputational harm caused by defendant's breach. On the other hand, the court concluded preliminary injunctive relief would require defendant to comply with a provision of a settlement agreement he voluntarily executed in exchange for consideration. The court also found enforcement of the non-disparagement provision would not negatively affect

---

[2] In a footnote, the motion court cited five of defendant's posts, four of which were alleged in the complaint. The fifth, "do you agree that Dodd is a corrupt tyrannical piece of shit?[,]" appeared in an exhibit attached to the complaint.

A-0047-25

the public interest, but would promote the public policy interest in the settlement of litigation.

The court rejected defendant's argument the non-disparagement provision was unenforceable because it did not contain a carve-out for speech protected by the First Amendment. The court found no support for defendant's argument in N.J.S.A. 10:5-12.8(a) or Savage v. Twp. of Neptune, 257 N.J. 204 (2024), on which defendant relied. Instead, the court concluded Savage held N.J.S.A. 10:5-12.8(a) invalidated a non-disparagement provision in an agreement with a public entity settling LAD claims only to the extent the provision precluded public disclosure of claims of discrimination, retaliation, or harassment underlying the settled claims. The court found defendant's posts did not relate to the claims of discrimination, retaliation, or harassment he raised in his federal court complaint. In addition, the court found N.J.S.A. 10:5-12.8(a), which was enacted in 2019, was not intended to be applied retroactively to the 2015 settlement agreement.

The motion court also found UPEPA was not applicable because defendant agreed to forbear from making disparaging comments about plaintiff, and its officials and employees, including future officials and employees, in exchange for $175,000. The court rejected defendant's argument plaintiff waived its rights under the non-disparagement provision by

not seeking its enforcement against defendant sooner. Finally, the court concluded if UPEPA applied to defendant, he was not entitled to dismissal of the complaint because plaintiff established a prima facie case as to each element of its cause of action for breach of contract. See N.J.S.A. 2A:53A-55(a)(3)(a).

An April 4, 2025 order granted plaintiff's request to enforce the non-disparagement provision and preliminarily enjoined defendant "from posting negative or derogatory social media posts or mak[ing] other disparaging comments against" plaintiff, its officials, or employees.[3] A second April 4, 2025 order denied defendant's OTSC.

Defendant moved for reconsideration of the April 4, 2025 orders. Plaintiff opposed the motion and cross-moved to dismiss defendant's UPEPA counterclaim with prejudice for failure to state a claim upon which relief can be granted.

On July 18, 2025, the court issued a written decision granting plaintiff's cross-motion. The court, applying Rule 4:6-2(e), found defendant could not state a claim under UPEPA because he agreed to the non-disparagement

---

[3] The order notes the court rejected plaintiff's request to order defendant to disgorge the $175,000 he received pursuant to the settlement agreement.

A-0047-25

provision in exchange for material consideration, thereby waiving his right to make the social media posts at issue.

With respect to defendant's argument the complaint infringed on his freedom of speech, the court held:

> [W]hile a majority of [d]efendant's arguments in opposition to [p]laintiff's [OTSC] have been grounded in assertions that the [p]laintiff's lawsuit impinges on [d]efendant's First Amendment [r]ights to engage in political discourse, nothing in the court's prior orders limits [d]efendant's ability to participate in political discourse. Rather, [d]efendant's sole limitation is that he comply with the terms of the settlement agreement that he signed and refrain from disparaging the [p]laintiff and the "Releasees." To this point, the settlement agreement does not prohibit [d]efendant from engaging in political discourse; rather, it only prevents [d]efendant from disparaging [p]laintiff and the "Releasees."

A July 18, 2025 order dismissed defendant's counterclaim with prejudice.

We granted defendant's motion for leave to appeal the July 18, 2025 order.

Defendant argues the motion court erred because: (1) it acted as a factfinder when deciding plaintiff's Rule 4:6-2(e) motion; (2) the non-disparagement provision is invalid because plaintiff cannot condition the receipt of a government benefit on the waiver of a constitutionally protected right; and (3) if the non-disparagement provision is valid, public policy

11

mandates it cannot be interpreted in so broad a fashion as to prevent defendant from engaging in protected speech on matters of public concern.

## II.

We apply a de novo standard of review to a trial court's order dismissing claims under Rule 4:6-2(e). See Stop & Shop Supermarket Co. v. Cnty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Loc. 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)). Under the rule, we owe no deference to the motion judge's conclusions. Rezem Family Assocs. v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011). Our "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Rieder v. Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., 423 N.J. Super. at 113 (citing Camden Cnty. Energy Recovery Assoc., LP v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)).

Our review of the July 18, 2025 order is guided by the unequivocal text of UPEPA. According to the statute, a party served with a "pleading that asserts a cause of action to which [UPEPA] applies . . . may file an application

12                                                                      A-0047-25

for an [OTSC] . . . to dismiss the cause of action . . . ."  N.J.S.A. 2A:53A-51.

UPEPA applies to:

> a cause of action asserted in a civil action against a person based on the person's:
>
> > (1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;
> >
> > (2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or
> >
> > (3) exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern.
>
> [N.J.S.A. 2A:53A-50(b).]

"N.J.S.A. 2A:53A-55(a) sets forth the grounds on which the party filing the [OTSC] application can prevail and mandates the court dismiss the responding party's cause of action with prejudice . . . if the movant prevails." Satz v. Starr, 482 N.J. Super. 55, 64 (App. Div. 2025).  N.J.S.A. 2A:53A-55(a) provides:

> a.  In ruling on an [OTSC] under [N.J.S.A. 2A:53A-51], the court shall dismiss with prejudice a cause of action, or part of a cause of action, if:
>
> > (1) the moving party established under [N.J.S.A. 2A:53A-50(b)] that this act applies;

13

(2) the responding party fails to establish under [N.J.S.A. 2A:53A-50(c)] that this act does not apply; and

(3) either:

(a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or

(b) the moving party establishes that:

(i) the responding party failed to state a cause of action upon which relief can be granted; or

(ii) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

New Jersey, following the example of several other states, enacted UPEPA in 2023 to "protect residents against frivolous, ill-intentioned lawsuits" intended to curb speech on matters of public concern, commonly known as strategic lawsuits against public participation (SLAPP), "and insulate them from the financial hardships these cases can produce." Satz, 482 N.J. Super. at 65 (quoting Press Release, Off. of the Governor, Governor Murphy Signs Bipartisan Bill Protecting Against Lawsuits Designed to Suppress Free Speech, at 1 (Sept. 7, 2023)); see also LoBiondo v. Schwartz, 199 N.J. 62, 86 (2009) ("[i]n an effort to deal with and deter SLAPP suits, a large number of state legislatures have responded.").

14

A-0047-25

In deciding an OTSC brought under N.J.S.A. 2A:53A-51, "the court may consider the pleadings, the [OTSC] application and supporting certifications, briefs, any reply or response to the [OTSC], and any evidence that could be considered in ruling on a motion for summary judgment."  N.J.S.A. 2A:53A-54.  Accord Wunsch v. CTE Republicans for Englewood Cliffs, 483 N.J. Super. 231, 246 (App. Div. 2026).

A court deciding an OTSC application must first determine if, under N.J.S.A. 2A:53A-50(b), UPEPA applies to the challenged cause of action. Satz, 482 N.J. Super. at 66.  A court then determines whether "there are grounds to grant the[] [OTSC] under N.J.S.A. 2A:53A-55(a)."  Ibid.

Here, the motion court concluded UPEPA does not apply to defendant's counterclaim because he voluntarily executed an agreement to forbear from engaging in the speech he alleges plaintiff is attempting to suppress with its complaint.  We disagree with the motion court's interpretation of UPEPA to contain a categorical exclusion where the party alleging an infringement on free speech has executed a non-disparagement provision encompassing that speech.

"In construing the meaning of a statute . . . our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013).  To interpret a statute, we "determine and give effect to the Legislature's intent."  In re H.D., 241 N.J.

412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[W]e begin by looking at the statute's plain language," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and give the language "its ordinary meaning and . . . construe[ it] in a common-sense manner," State in re K.O., 217 N.J. 83, 91 (2014). "We will 'neither rewrite a plainly[] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). The Legislature required UPEPA "be broadly construed and applied to protect the exercise of the right of freedom of speech . . . guaranteed by the United States Constitution or the New Jersey Constitution." N.J.S.A. 2A:53A-59.

N.J.S.A. 2A:53A-50(b)(1) to (3), set forth the three categories of civil actions to which UPEPA applies. One of those categories is plainly applicable here: plaintiff's complaint is "based on" defendant's "exercise of the right of freedom of speech . . . guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(b)(3). Plaintiff alleges a breach of contract based on defendant's social media posts criticizing elected officials and public employees on matters

16

A-0047-25

relating to the performance of their official duties. "Discourse on political subjects and critiques of the government will always fall within the category of protected speech . . . ." W.J.A. v. D.A., 210 N.J. 229, 244 (2012) (quoting Senna v. Florimont, 196 N.J. 469, 496-97 (2008)).

> The First Amendment protects speech about the state itself – those who govern, how they govern, and who might govern better. "[T]here is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates . . . and all . . . matters relating to the political processes."
>
> [Mazadabrook Commons Homeowners Ass'n v. Khan, 210 N.J. 482, 499 (2012) (alteration in original) (quoting Mills v. Alabama, 384 U.S. 214, 218-19 (1966)).]

The social media posts identified in the complaint are protected speech within the meaning of N.J.S.A. 2A:53A-50(b).

In addition, the statute does not contain an express exclusion from its protection for those who are bound by a non-disparagement provision in a settlement agreement. While the intended scope of the non-disparagement provision will be critical to determining whether defendant is entitled to dismissal of the complaint, the mere existence of the non-disparagement provision does not preclude him from applying for UPEPA relief. See Lowes v. Thompson, 573 P.3d 377, 386-87 (Or. 2024) (holding a non-disparagement

17

provision in a settlement agreement does not constitute a waiver of the protections of Oregon's anti-SLAPP statute, but a complaint alleging breach of the non-disparagement provision will not be dismissed under that statute if the plaintiff can demonstrate a probability of success on the breach of contract claim).

Because the motion court concluded UPEPA did not apply to defendant's counterclaim, it did not determine if any of the subsections of N.J.S.A. 2A:53A-55(a)(3) were satisfied and warranted dismissal of the complaint. That is, the court did not determine whether plaintiff "fail[ed] to establish a prima facie case as to each essential element of" its breach of contract claim, N.J.S.A. 2A:53A-55(a)(3)(a), or failed to allege a cause of action upon which relief can be granted on that claim, N.J.S.A. 2A:53A-55(a)(b)(i), or if defendant was entitled to judgment as a matter of law on all or part of the claim alleged in the complaint, N.J.S.A. 2A:53A-55(a)(3)(b)(ii).[4]

---

[4] We recognize the motion court, in its April 4, 2025 decision, concluded plaintiff demonstrated a likelihood of success on the merits of its breach of contract claim. That decision was memorialized in the court's April 4, 2025 order granting preliminary injunctive relief in the underlying action. The April 4, 2025 order, however, is not before this court. We note that in reaching the April 4, 2025 decision, the motion court did not address many of the issues detailed in our remand instructions set forth below. Also, because the April 4, 2025 order is not before us, we do not address defendant's argument the motion court erred by making factual and credibility findings with respect to

We therefore vacate the July 18, 2025 order and remand for the court to consider whether defendant is entitled to dismissal of the complaint pursuant to UPEPA. We identify several issues for the court to address on remand.

N.J.S.A. 2A:53A-55(a)(3)(b)(i) requires the court to determine whether "the responding party [to the OTSC] failed to state a cause of action upon which relief can be granted[,]" mirroring the language of Rule 4:6-2(e). Thus, a plain reading of the statute requires the court to apply the Rule 4:6-2(e) standard to that inquiry. In addition, a court considering the viability of a UPEPA claim may apply the summary judgment standard to determine whether "the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint," N.J.S.A. 2A:53A-55(a)(3)(a), and whether "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law . . . ." N.J.S.A. 2A:53A-55(a)(3)(b)(ii).

To evaluate defendant's UPEPA counterclaim it will be necessary for the remand court to determine the meaning and scope of the non-disparagement provision. The settlement agreement does not define "negative comments" or "disparaging remarks" as those terms are used in the non-disparagement

---

whether defendant's social media posts were "negative comments or disparaging remarks" within the meaning of the non-disparagement provision.

19

provision. It is apparent the parties disagree on the scope of the provision. Defendant, in effect, argues those terms were not intended to be interpreted so broadly as to encompass his social media posts on matters of public concern, including the posts alleged in the complaint addressing the conduct of plaintiff's officials and employees relating to their public duties. Plaintiff takes the position defendant agreed not to make any public statement about plaintiff, its officials and employees, including those in office nearly a decade after the agreement was executed and who may have no connection to the allegations in defendant's federal complaint, that can be viewed as negative, regardless of whether the comments address matters of public concern.

When evaluating the breach of contract claim, the remand court's task will be to "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009). "Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017). "[U]nambiguous contracts are to be enforced as written . . . ." Grow Co. v. Chokshi, 403 N.J. Super. 443, 464 (App. Div. 2008).

20

Whether a provision of a contract is ambiguous is a legal question for the remand court. Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997). To ascertain the intention of the parties, and to determine if an ambiguity exists, the remand court may, if necessary, consider extrinsic evidence offered to support conflicting interpretations. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269-70 (2006). Permissible extrinsic evidence to consider in the event of an ambiguity includes "consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Id. at 269 (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

In addition, to the extent the non-disparagement provision precludes defendant from engaging in speech that is otherwise constitutionally protected, the remand court must determine if defendant's waiver of his free speech rights was "knowing, intelligent, and voluntary," Mazadabrook, 210 N.J. at 505, and sufficient to overcome "every reasonable presumption against wavier of fundamental constitutional rights." Ibid. (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

The remand court must also consider defendant's argument the non-disparagement provision is against public policy. N.J.S.A. 10:5-12.8(a), which

A-0047-25

declares agreements that have "the purpose or effect of concealing the details relating to a claim of discrimination, retaliation, or harassment" to be "against public policy and unenforceable against a current or former employee who is a party to the contract or settlement[,]" does not apply here. See L. 2019, c. 39, § 6 (approved Mar. 18, 2019, and providing N.J.S.A. 10:5-12.8(a) "shall take effect immediately and shall apply to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date."). However, in Savage, the Court, while discussing the limited scope of N.J.S.A. 10:5-12.8(a) noted:

> In theory, parties can agree not to disparage one another by disclosing information that has nothing to do with "details relating to . . . claim[s] of discrimination, retaliation, or harassment." See [N.J.S.A. 10:5-12.8(a)]. For example, parties could agree not to disclose details about their personal lives or matters unrelated to a discrimination claim – like "my employer drinks heavily at work" or "cheats on his taxes." Such an agreement, however, would have to be narrowly drawn to ensure that details relating to the claims listed in section 12.8 could be revealed publicly.
>
> [257 N.J. at 217 (alterations in original).]

We understand this passage in the Savage opinion to explain the limited scope of N.J.S.A. 10:5-12.8(a), rather than to hold our State's public policy permits enforcement of an agreement by a former municipal employee to refrain from making any "negative comments or disparaging remarks" about

22

the municipality, and its present or future officials and employees, about any matters of public concern in perpetuity. We leave to the remand court to determine in the first instance whether the parties' non-disparagement provision, as interpreted by the court, is consistent with public policy.

Lastly, the remand court must address defendant's argument the non-disparagement provision is unenforceable because plaintiff conditioned the receipt of a public benefit on defendant's waiver of his constitutional rights. In support of this argument, defendant cites two precedents. One is Joye v. Hunterdon Cent. Reg'l High Sch. Bd. of Educ., 176 N.J. 568, 618-19 (2003), in which the Court, in a 4-3 decision, held a program of random suspicionless drug testing of high school students was constitutional. In his brief, defendant, citing page 644 of the Joye opinion, states: "The Court held that 'the government is forbidden from making the receipt of a benefit . . . contingent on the infringement of a constitutionally protected right.'" That quote, however, is from the dissent in Joye and does not reflect the Court's holding.

In its only other quotation from Joye, defendant's brief states

> The Court reasoned:
>
>> The school district cannot require "voluntary" waiver of the right to be free from searches any more than the county commissioners of Wabaunsee County, Kansas could require municipal contractors to "voluntarily" waive their

> First Amendment right to criticize the local government in order to receive government contracts. Joye, 176 N.J. at 644 (emphasis added).

This quote too is from the dissent in Joye. Again, despite defendant's suggestion by quoting this passage that the Court invalidated the random drug testing program in Joye, the Court reached the opposite result. See 176 N.J. at 618-19. The reference in defendant's brief to Wabaunsee County, Kansas is unexplained and the precedent on which it is apparently based is not provided.

Finally, defendant cites Perry v. Sindermann, 408 U.S. 593 (1972), without further explanation, for the proposition that support for his unconstitutional conditioning argument is well-settled.

If we were reviewing the merits of defendant's unconstitutional conditioning argument, the quoted passages from a dissenting opinion and an unexplained reference to a United States Supreme Court opinion would be insufficient to carry the day. Because we are remanding this matter for the reasons explained above, defendant may renew his unconstitutional conditioning argument before the remand court.

On remand, the arguments of the parties and the court's analysis of their claims are not limited to issues identified in this opinion. We offer no view on the outcome of the remand proceedings.

A-0047-25

The July 18, 2025 order is vacated and the matter is remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

25                                                                    A-0047-25